**BRASELTON–WATSON BUILDERS, INC., Appellant,**

v.

**C. B. BURGESS d/b/a Burgess Construction Company, Appellee.**

**No. 1283.**

Court of Civil Appeals of Texas, Corpus Christi.

April 27, 1978.

Rehearing Denied June 8, 1978.

James R. Harris, Corpus Christi, for appellant.

David T. Burkett, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit brought by plaintiff to recover a $700.00 balance due on an oral sub-contract for work done for defendant builder in connection with the construction of a home located on Xanadu Street in Corpus Christi, Texas. The defendant builder, Braselton-Watson Builders, Inc., filed a cross action requesting judgment for the same amount which had been withheld

by defendant because of allegedly deficient work performed by the plaintiff at another home site located on Cherry Hills Street in Corpus Christi. The case was tried to a jury, and at the close of the evidence, the trial court directed a verdict for plaintiff for $700.00 due plaintiff on the Xanadu project and then submitted defendant's cross action to the jury. Based on the jury's answers to special issues, the trial court denied all relief to the defendant builder on its cross action. Defendant has perfected its appeal to this Court.

Defendant Braselton-Watson Builders, Inc., is a corporation which engages in the home building business in Corpus Christi, Texas. Plaintiff C. B. Burgess, d/b/a Burgess Construction Company engaged in foundation and concrete slab work for various home builders in the Corpus Christi area. The dispute between the parties concerns two oral contracts whereby plaintiff completed foundation and slab work at two of defendant builder's project sites, one located on Xanadu and the other on Cherry Hills in Corpus Christi. The foundation and slab work for the Cherry Hills project was completed and paid for first, and thereafter plaintiff completed the work at the Xanadu location. Plaintiff then submitted an invoice to defendant for $2,890.00 which represented the agreed price for the Xanadu location. By a check dated March 5, 1975, defendant builder paid plaintiff $2,190.00 for the Xanadu project, $700.00 less than the amount of the invoice. A notation on the lower left hand corner of the check indicated that $700.00 was being withheld pending "completion of repairs [at] 4934 Cherry Hills".

Plaintiff then instituted suit on the $700.00 deficiency against "Fred Braselton and R. L. Watson, d/b/a Braselton Watson Builders." The petition recited that service of process could be had on Mr. R. L. Watson at 4249 Mulligan, Corpus Christi, Texas. Braselton and Watson filed a general denial in their individual capacities. Two years after plaintiff's cause of action accrued, defendants Braselton and Watson filed an amended answer alleging that they had never carried on a business as Fred Brasel-

ton and R. L. Watson d/b/a Braselton Watson Builders. Defendants specifically denied under oath that they were partners as alleged in plaintiff's petition. In addition, defendants alleged that the plaintiff's suit was based on an agreement between plaintiff and the corporation "Braselton-Watson Builders, Inc."

Plaintiff then filed an amended petition naming as defendant "Braselton-Watson Builders, Inc." Defendant Braselton-Watson Builders, Inc., filed an answer alleging that plaintiff's suit was barred by the two-year statute of limitations. Defendant corporation also filed a cross action against plaintiff alleging that the work plaintiff performed for defendant on the Cherry Hills project was deficient and failed to conform to the agreement between the parties; that such deficiencies damaged defendants in the amount of $750.00; and that defendants had exercised its lawful right of offset by deducting $700.00 in its payment to plaintiff for the Xanadu project.

At the close of the evidence, the trial court denied defendant's motion for an instructed verdict based on its limitation defense and granted plaintiff's motion for an instructed verdict for $700.00 representing the outstanding balance owed to plaintiff for slab work on the Xanadu project. The trial court submitted special issues to the jury concerning defendant's cross action to establish the validity of the offset it had previously taken. In response to special issues, the jury, in relevant part, found: 1) that the plaintiff failed to complete the Cherry Hills project in accordance with the plans and specifications; 2) that such failure was not a producing cause of any damages or injury to the defendant; and 3) that $700.00 would be the reasonable cost to correct the deficient work at the Cherry Hills project. Based on the jury's findings, the trial court granted plaintiff's motion for judgment on the verdict, and denied defendant's motion to disregard special issue number two above and to render judgment in favor of defendant on its cross action. Defendant builder brings forward three points of error.

In point of error one, defendant builder contends that the two-year statute of limitations applicable to plaintiff's claim had run prior to the time plaintiff filed its amended petition naming, for the first time, "Braselton-Watson, Inc." as a party defendant. Plaintiff maintains on the other hand, that its original petition which was filed within the statutory time period against "Fred Braselton and R. L. Watson, d/b/a Braselton Watson Builders," merely misnamed the defendant it intended to sue and therefore, its original petition tolled the statute of limitations as to "Braselton-Watson, Inc." Defendant builder argues that plaintiff's original petition was nothing more than a suit against a partnership while its amended petition stated a cause of action against a corporation which, in effect, is a suit against a new and different party. Therefore, the "misnomer" cases are inapplicable to this situation. We disagree.

█ If plaintiff sued the right party but merely misnamed the corporation, then service upon R. L. Watson, one of its officers and principal shareholders, was proper and the corporation was then under a duty to plead such "misnomer" and seek abatement. Its failure to file a plea in abatement would constitute a waiver of the corporation's right to abate the lawsuit and the subsequent amendment of plaintiff's pleadings correctly stating the corporation's name would relate back to the date of plaintiff's original petition. *Adams v. Consolidated Underwriters*, 133 Tex. 26, 124 S.W.2d 840 (1939); *Abilene Independent Telephone & Telegraph Co. v. Williams*, 111 Tex. 102, 229 S.W. 847 (1921); *Astro Sign Company v. Sullivan*, 518 S.W.2d 420 (Tex.Civ.App.— Corpus Christi 1974, writ ref'd n. r. e.); *Thomas v. Cactus Drilling Corporation of Texas*, 405 S.W.2d 214 (Tex.Civ.App.—Austin 1966, no writ); *Craig v. White Plaza Hotel*, 289 S.W.2d 625 (Tex.Civ.App.—Waco 1956, writ ref'd n. r. e.).

█ We must point out and distinguish the cases where a plaintiff has sued and obtained service upon the wrong party. In those situations, the plaintiff has made a mistake in the identity of defendant and the statute of limitations continues to run until the plaintiff files an amended petition to join the proper party in a new lawsuit. In such an instance, the defendant is not under any duty to notify the plaintiff of his mistake. *Davis v. Outdoor Equipment Co.*, 551 S.W.2d 72 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ); *Astro Sign Company v. Sullivan*, supra; *Gillette Motor Transport Co. v. Whitfield*, 160 S.W.2d 290 (Tex.Civ. App.—Fort Worth 1942, no writ); *Cosand v. Grey Wolfe Co.*, 262 S.W.2d 547 (Tex.Civ. App.—Galveston 1953, no writ); *West v. Johnson*, 129 S.W.2d 811 (Tex.Civ.App.— Fort Worth 1939, writ ref'd).

In the case before us it is undisputed that R. L. Watson was properly served with citation had plaintiff correctly named the defendant corporation in its original petition. Plaintiff construction company intended to sue the business entity with which it had its sub-contract. However plaintiff sued Braselton-Watson, Inc., as though it were a partnership and not a corporation. Defendant builder relies on *Davis v. Outdoor Equipment Co.*, supra to support its contention that "a partnership is a different party from a corporation and suing one is not suing the other." In *Davis*, however, two separate business entities existed. One, a partnership, and the other a corporation, which shared the common name "Outdoor Equipment Company." In *Davis*, the plaintiff incorrectly sued and served the corporation. In our case only one business entity exists and it was admitted to be Braselton-Watson Builders, Inc. In their amended answer Braselton and Watson pled under oath that they were not partners and had never conducted business under the name "Fred Braselton and R. L. Watson d/b/a Braselton Watson Builders." Plaintiff sued the correct business entity only under the wrong name. See *West v. Johnson*, supra, at 815.

█ The primary purpose of a statute of limitations is to compel the plaintiff to institute a cause of action within a reasonable time so that the opposite party has a fair opportunity to defend while witnesses are

available and while the evidence is fresh in their minds. *Continental Southern Lines v. Hillard*, 528 S.W.2d 828, 831 (Tex.Sup.1975). One justification for tolling the statute of limitations in misnomer cases, is that in spite of incorrect name, the party intended to be sued has been served and has been put on notice that he, and not some other person, is the intended defendant. Plaintiff's petition and attached invoice clearly apprised defendant builder that it was the intended defendant and that the subject matter of this suit concerned an oral contract to which it was a party. Defendant's point of error one is overruled.

In points of error two and three defendant makes two arguments to support its contention that the trial court erred in failing to disregard the jury's answer to special issue number two above. Defendant contends first that this special issue should be disregarded as a matter of law because in special issue number one the jury found that plaintiff, Burgess Construction Company, failed to complete the foundation work at 4934 Cherry Hills in accordance with the plans and specifications, and in special issue number three the jury found that the reasonable cost to correct the deficient work would be $700.00. Defendant argues that causation is not a contested issue in a contract case when the jury has found a breach of the contract and also found the appropriate measure of damages.

■ Defendant argues here that special issue number two should not have been submitted to the jury. This special issue asked the jury to determine in effect whether plaintiff's failure to complete the Cherry Hills project caused any injury or damage to the defendant. An elementary principle of contract law is that the complaining party must establish his right to recover compensatory damages by proving that he suffered some pecuniary loss as a result of the breach. *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 486 (1952); *Jones v. George*, 61 Tex. 345, 350 (1884). In general, the right to recover compensatory damages for the breach of a contract will be defeated if 1) no damage was suffered

by the complaining party despite the breach; e. g., *Baw Manufacturing Company v. Slaks Fifth Avenue, Ltd.*, 547 F.2d 928, 931 (5th Cir. 1977); *United States and United Insulation Company, Inc. v. Williams & Dunlap*, 210 F.Supp. 492 (W.D.La.1962); *Jones v. George*, supra; *Stewart v. Basey*, supra; or 2) if the damages which he sustained did not result from the breach; e. g., *LeBlanc, Inc. v. Gulf Bitulethic Company*, supra; *Pacific Coast Engineering Co. v. Trinity Construction Co.*, 410 S.W.2d 797, 800 (Tex.Civ.App.—Waco 1967, writ ref'd n. r. e.); *Sinclair Refining Co. v. Costin*, 116 S.W.2d 894, 898 (Tex.Civ.App.—Eastland 1938, no writ).

■ In addition, the burden was on defendant to object to the form of objectionable issues and to submit substantially correct issues pertaining to its cross action. Rule 279, Texas Rules of Civil Procedure. We find no complaint in the record directed against this special issue, or any of the other special issues the trial court submitted to the jury. Although we need not express an opinion as to the form in which this special issue was submitted, we find that the issue did embrace an ultimate fact to be determined by the jury that was essential to defendant's cross action. Therefore, the trial court did not err in failing to disregard the jury's answer as a matter of law. Defendant's second point of error is overruled.

Defendant next argues that the jury's negative answer to special issue number three was caused by the trial court's failure over defendant's objection, to exclude evidence concerning a collateral transaction which allowed the jury to draw the improper inference that the defendant builder was not damaged in spite of the plaintiff's failure to comply with the plans and specifications. It was undisputed at trial that Fred Braselton, one of the principal shareholders of the defendant corporation, was the initial occupant of the Cherry Hills home in question. He testified at length concerning the defects that existed in the patio at his Cherry Hills residence that allegedly caused water to accumulate after a rain. He ad-

mitted that he had sold this home to another individual six months prior to the trial, and that he and his family had moved into another home. Braselton was asked whether he had told the new purchaser about the alleged defects existing in the patio. Defendant's counsel objected to this question on the basis that it pertained to a collateral matter and had nothing to do with this lawsuit. After a short discussion with the trial judge outside the presence of the jury, (the record does not indicate what was said), defendant's counsel stated:

> "On the record, we offer to stipulate that the difficulties had not been corrected and that after the offer to make such stipulation the Court overruled our objection . . . [to the question]."

Braselton then testified that the "purchaser looked at the house, liked what he saw and made an offer which we accepted." He testified that he did not inform the purchaser of the alleged defects nor did he allow an offset in the purchase price to compensate for such defects.

The defendant now complains that Fred Braselton, as an individual, is not a party to the lawsuit and that this evidence allowed the jury to erroneously conclude that, since Braselton as an individual had not been damaged, the corporation had also not been damaged by plaintiff's defective concrete slab work. The record is silent as to how Braselton came into possession of the house in question. There was no evidence concerning the sale from the corporation to Braselton or the terms of Braselton's subsequent sale to the individual. If Braselton lived in the home but did not purchase it from the defendant corporation then the subsequent sale by Braselton was actually a sale on behalf of the corporation. Such evidence would be directly relevant to the damage question, especially since Braselton failed to inform the purchaser of the defects and did not reduce the purchase price to reflect damages to the corporation. In any case the evidence would be admissible at the time it was offered subject to being connected to the corporate ownership later. We do not have any idea what discussions took place at the bench or outside of the

record. The evidence was not inadmissible per se at the time it was offered. If the evidence was not later connected up, or if the defendant later proved it had sold the property to Braselton as an individual, then defendant should have moved to have the evidence stricken and the jury instructed to disregard it. This he did not do.

■ As a general rule for evidence to be considered relevant there must be some logical connection either directly or by inference between the proffered evidence and the ultimate fact to be proved. Since the defendant did not prove that it had the patio repaired or suffered a loss or deduction when it sold the property, if it did, then the logical evidentiary inference would support the jury's answer that defendant suffered no loss. The defendant corporation had the burden to prove that it suffered some damages as a result of plaintiff's breach of its contract. It was the defendant corporation's responsibility to introduce evidence from which the jury could assess the amount of damages with some degree of certainty.

■ We have reviewed the entire record and have failed to find that the defendant corporation suffered any actual damages as a result of the defects in the patio. In fact there was no evidence that would have supported an opposite answer to special issue number two above. Since the defendant corporation's principal stockholder lived in the house at the outset and sold the house to a new purchaser without deduction for the defect in the patio, the defendant corporation has not demonstrated that the admission of this particular evidence constituted error that caused or probably caused the rendition of an improper verdict. Rule 434, T.R.C.P. *Warren v. Fort Worth & D. C. Ry. Co.*, 208 S.W.2d 569, 571 (Tex.Civ.App. —Fort Worth 1948, writ ref'd n. r. e.); see also *Texas State Bank of Austin v. Sharp*, 506 S.W.2d 761 (Tex.Civ.App.—Austin 1974, writ ref'd n. r. e.); *Otto v. Otto*, 438 S.W.2d 587, 590 (Tex.Civ.App.—San Antonio, 1969, no writ); *Pittman v. Baladez*, supra; *Mueller v. Central Power and Light*, 403 S.W.2d

901, 905 (Tex.Civ.App.—Corpus Christi, 1966, no writ); Rule 503, T.R.C.P. Defendant's third point of error is overruled.

The judgment of the trial court is AFFIRMED.