Opinion issued April 21, 2011



In The

Court of
Appeals

For The



First
District of Texas

NO. 01-08-00550-CV



Eric and Beverly Hixon, Appellants

V.

Tyco
International, Ltd. d/b/a Simplex Products, K2, Inc. d/b/a Simplex Products, and
Pedigo Services, Inc., Appellees



 



 

On Appeal from the 152nd District Court

Harris County, Texas



Trial Court Case No. 2001-62472

 



 

MEMORANDUM OPINION

This is the
second appeal arising from this residential construction-defect dispute.  This Court previously affirmed summary
judgment as to several of the plaintiffs’ claims as limitations barred.  Hixon
v. Tyco Int’l, Ltd, No. 01-04-01109-CV, 2006 WL 3095326, at *10 (Tex.
App.—Houston [1st Dist.] Oct. 31, 2006, no pet.).  We reversed and remanded, however, the
portion of the trial court’s summary judgment resolving claims that were not
addressed in the defendants’ motions for summary judgment.  Id.
at *13.  The trial court then granted
summary judgment as to both the remanded claims and some additional claims
brought by the plaintiffs following remand. 
The plaintiffs again appealed. 
Because the trial court’s summary judgments did not address all pending
claims against all remaining defendants, the Court abated this appeal to allow
the trial court to consider the plaintiffs’ motion to sever claims against
certain defendants.  The trial court has
now granted that motion to sever, rendering the summary judgment judgments that
are the subject of this appeal final and appealable.

We affirm the trial court’s grant
of summary judgment on the Hixons’ breach-of-contract and fraud-by-nondisclosure
claims against defendants Pedigo Services, Inc., Tyco International Ltd. d/b/a
Simplex Products, and K2, Inc. d/b/a Simplex Products.  We reverse and remand the trial court’s
summary judgment on the Hixons’ (1) breach-of-warranty and negligent
undertaking claims against Pedigo, Tyco and K2, and (2) strict tort product
liability, negligent product design and negligent distribution claims against
Tyco and K2.  We also remand to the trial
court the Hixons’ claim that their suit against K2 relates back to the filing
of their suit against Tyco under misnomer and misidentification theories for
consideration by that court in the first instance, if necessary, on a more
developed record.     

Background

In 1994, plaintiffs Eric and
Beverly Hixon hired Ausmus Homes, Inc. to build a house.  The house was designed to have exterior walls
covered in artificial stucco, referred to as “EIFS cladding” or “Finestone,”
that was manufactured by defendant K2, Inc.[1]  Ausmus hired defendant Arturo Perez to
install the EIFS cladding and hired defendant Pedigo Services, Inc. to install
the roof.      

Leaks attributable to either the
roof or the EIFS cladding caused water to seep into the house beginning in
1995.  The leaks dramatically worsened in
mid-1997, resulting in separation of the EIFS cladding from the house on the
East side, as well as rotted studs and plywood sheathing on that same
side.  Pedigo and either K2 or Tyco
repaired these problems in 1998 and 1999. 
Pedigo also contracted for defendant Martin Spears d/b/a MLS Services to
perform demolition and repair of the EIFS system on the Hixons’ home in
1999.  

According to the Hixons, at that
time a K2 representative told them that there were no additional problems.  In February and March 2000, new leaks
occurred in areas of the house that had not previously leaked.  Pedigo attempted several repairs,
unsuccessfully, and then refused to perform any additional repairs.  

A.   Prior Proceedings

A 2001 engineering report
commissioned by the Hixons identified several defects related to the
installation of the roof and the EIFS cladding. 
The Hixons sued Tyco, Pedigo, Perez, and Martin Spears on December 1,
2001, and added claims against Tyco on June 28, 2002.  The Hixons contended that all the defendants
were negligent in several respects. 
Theories of liability against Pedigo included negligent performance of
an undertaking, breach of common law express and implied warranties under the
Deceptive Trade Practices-Consumer Protection Act (DTPA), fraudulent
concealment of defects under the DTPA, and violations of the Residential
Construction Liability Act.  Theories
against Tyco and K2 included product liability, strict tort liability,
negligent product design, negligent product distribution, breach of implied and
express warranties, common law misrepresentation, and misrepresentation and fraud
under the DTPA.    

Pedigo, Tyco and K2 filed motions
for summary judgment in 2002 and 2004, which were granted by the trial court in
2004.  The trial court severed the claims
against those three defendants, rendering the summary judgments final.  The Hixons appealed, challenging the trial
court’s determination that their claims were time barred.  

On appeal, this Court held the
“summary judgment evidence compels the following conclusions: (1) the Hixons
knew, that is, discovered, in mid-1997, that there were significant
water-leakage problems with the house; and (2) the knowledge they acquired was
sufficient, as a matter of law, to end the application of the discovery rule
and to constitute knowledge of potential claims.  2006 WL 3095326, at *7.  Accordingly, we concluded that “application
of the discovery rule ended for the Hixons in mid-1997, thus triggering all
applicable statutes of limitations,” such that “the two-year statute of
limitations expired in mid-1999 and the four-year statute of limitations
expired in mid-2001.”  2006 WL 3095326,
at *10.  

Because the date of accrual as to
several claims not addressed in the defendants’ motions for summary judgment
were not established as a matter of law, however, the Court reversed and
remanded the summary judgments on those claims. 
Specifically, as to Pedigo, the Court remanded the Hixons’ DTPA warranty
and negligent undertaking claims.  Id. at 13.  As to K2 and Tyco, the Court remanded the
Hixons’ claims for product liability, strict tort liability, negligent product
design, negligent product distribution, breach of implied and express
warranties, and misrepresentation.  Id.

B.   Post-Remand Proceedings     

Following remand, the trial court
consolidated the proceedings into the pending suit against Perez and
Spears.  On February 5, 2008, the Hixons
filed a Fifth Amended Petition.  Relevant
to this appeal, they asserted that (1) Pedigo, Tyco and K2, jointly and
severally, “breached their contractual relationship” with the Hixons by failing
to remedy all of the known problems that existed with the Hixons’ home when it
was repaired in 1999, (2) in 1999, Pedigo, Tyco, and K2 negligently undertook
repairs to the Hixons’ home, (3) Pedigo, Tyco, and K2 breached common law
express and implied warranties, (4) Pedigo, Tyco and K2 committed fraud through
nondisclosure, (5) Tyco and K2 are strictly liable for the faulty design,
manufacturing, marketing, and placement of the EIFS cladding into the stream of
commerce, (6) Tyco and K2 were negligent in the design, manufacture, and
marketing of the EIFS cladding and (7) K2 and Tyco were negligent in
distributing the EIFS cladding.  

Pedigo, K2, and Tyco filed motions
for summary judgment as to each of these claims.  They argued that (1) Hixons’ remanded claims
are time barred, 
(2) the claims the Hixons added since remand are both time barred and outside
the scope the Court’s limited remand, and (3) some of the claims the Hixons
added since remand were already necessarily disposed of in the first summary
judgments affirmed by this Court.  

On April 4, 2008, the trial court
granted summary judgment as to each claim against Pedigo, K2, and Tyco.  It later severed these claims from the pending
claims against Perez and Spears, rendering them final and appealable. 

This Appeal

In their first four issues, the
Hixons argue that the trial court erred by granting summary judgment in favor
of K2, Tyco, and Pedigo.  In their fifth
issue, they contend that the trial court abused its discretion in denying their
motion for new trial and by not ruling on their objections to the Pedigo’s
summary judgment evidence.  Finally, in
their sixth issue, the Hixons assert that the trial court committed error by
allegedly dismissing their claims against Perez and Spears in the order
granting summary judgment in Pedigo’s favor. 
This sixth issue has been resolved by the trial court’s severance of the
claims against Perez and Spears, which remain pending in the trial court.  We thus need only address the Hixons’ first
five issues.                 

A.   Standard of Review

We review de novo the trial court’s
ruling on a motion for summary judgment.  Mann
Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848
(Tex. 2009).  In a traditional motion for
summary judgment, the movant must establish that no genuine issue of material
fact exists and that the movant is entitled to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c). When a defendant moves for summary judgment, it must
either (1) disprove at least one essential element of the plaintiff’s cause of
action or (2) plead and conclusively establish each essential element of its
affirmative defense, thereby defeating the plaintiff’s cause of action.  Cathey
v. Booth, 900 S.W.2d 339, 341 (Tex. 1995).  To determine if the nonmovant raised a fact
issue, we review the evidence in the light most favorable to the nonmovant,
crediting favorable evidence if reasonable jurors could do so, and disregarding
contrary evidence unless reasonable jurors could not.  See
Fielding, 289 S.W.3d at 848 (citing City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005)).  When, as here, the trial court’s summary
judgment order does not state the basis for the trial court’s decision, we must
uphold the order if any of the theories advanced in the motion is meritorious. Provident Life & Accident Ins. Co. v.
Knott, 128 S.W.3d 211, 216 (Tex. 2003).

B.  
Scope of this Court’s Remand

Tyco, K2,
and Pedigo argued, as a ground for summary judgment, that the new claims added
by the Hixons post-remand were improper because these claims are outside the
scope of this Court’s limited remand from the prior appeal.  In their first issue here, the Hixons argue
that the “trial court erred in granting K2, Tyco and Pedigo’s summary judgment
motions based upon an argument that the Court of Appeals’ October 31, 2006,
opinion limited the Hixons’ right to assert new causes of action beyond the
causes of action reversed and remanded by the Court of Appeals.” 

“When this
court remands a case and limits a subsequent trial to a particular issue, the
trial court is restricted to a determination of that particular issue.”  Hudson
v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986).  But, “when an appellate court remands a case
for further proceedings and the mandate is not limited by specific
instructions, the effect is to remand the case to the lower court for a new
trial on all issues of fact, and the case is reopened in its entirety.” Price v. Gulf Atl. Life Ins. Co., 621
S.W.2d 185, 187 (Tex. Civ. App—Texarkana
1981, writ ref’d n.r.e.).  “For a
reversal to be limited to particular fact issues, it must clearly appear from
the decision that it was so intended.”  Id. 

This
Court’s prior opinion affirmed the trial court’s summary judgment as to some
claims and remanded as to others.  It did
not, however, contain any language limiting the Hixons’ ability to add claims
so long as those claims had not already been resolved by the portion of the
trial court’s summary judgment that this Court affirmed.  It states:

We reverse the portion of the trial court’s
final judgment that dismisses with prejudice the Hixons’ DTPA warranty and
negligent undertaking claims against Pedigo and that dismisses with prejudice
the Hixons’ claims against K2 and Tyco for products liability, strict tort
liability, negligent product design; negligent product distribution, breach of
implied and express warranties, and misrepresentation.  We affirm the judgment of the trial court in
all other respects.

  

Hixon, 2006 WL 3095326, at *13.  The mandate likewise did not contain any
limiting language:

[I]t is the opinion of this Court that there
was reversible error in the portion of the judgment dismissing the appellants’
DTPA warranty claims and negligent undertaking claims, which were raised in
their third amended petition, against Pedigo Services, Inc.  It is further the opinion of this Court that
there was reversible error in the portion of the judgment dismissing the
appellants’ products liability, strict tort liability, negligent product
design, negligent product distribution, breach of implied and express
warranties, and misrepresentation claims, which were asserted in their third
amended petition, against K2, Inc. and Tyco International, Ltd.  It is, therefore, CONSIDERED, ADJUDGED, and
ORDERED that the judgment of the court below, as to the claims referenced
hereinabove, be reversed and remanded for further proceedings.

  

It is further the opinion of the Court that
there was no reversible error in the remaining portions of the judgment.  It is, therefore, CONSIDERED, ADJUDGED, and
ORDERED that the remaining portions of the judgment of the court below, except
as hereinabove reversed and remanded, be, and are in all things, affirmed.  

 

Because our
opinion and mandate did not include any language limiting the Hixons to their
previously pleaded claims, the Hixons were free to amend their pleadings to add
new claims or parties, except as to those claims on which we rendered summary
judgment in the defendants’ favor.  Simulis, L.L.C. v. Gen. Elec. Capital Corp.,
__ S.W.3d __, 2011 WL 505334, at *4 (Tex. App.—Houston [14th Dist.] Feb. 15,
2011, no pet.).  We thus sustain the
Hixons’ first issue.  The scope of the
remand was, however, but one of the defendants’ arguments in support of summary
judgment.  If any of the defendants’
alternative arguments support the judgment, we must affirm. Knott, 128 S.W.3d at 216.   

C.  
The
Hixons’ Claims Subject to a Four-Year Statute of Limitations

 

In the
Hixons’ second issue, they assert the “trial court erred in granting K2, Tyco
and Pedigo’s summary judgment motions based upon the Hixons’ breach of
contract, breach of express or implied warranty and fraud by nondisclosure
claims because they were barred by limitations.”  

1.     Breach of Contract  

The Hixons’
Fifth Amended Petition filed January 18, 2008 alleges that “a contractual
relationship was created with Defendant Pedigo and Defendants K2 [and Tyco]
when the Defendants agreed to repair Plaintiffs’ home in 1999.”  They claim that “Defendants K2[, Tyco,] and
Pedigo, after inspecting Plaintiffs’ home for evidence of damage from water
intrusion, offered to repair the home” and that the Hixons “exercised
forbearance in bringing suit against Defendants in return for the promise to
repair all of the damage to Plaintiffs’ home.” 
Pedigo, Tyco, and K2 breached this agreement, the Hixons assert, when
they “failed to remedy all of the known problems that existed with Plaintiffs’
home, when Plaintiffs’ home was repaired in 1999.”  

Pedigo’s
motion for summary judgment asserts that these claims, although couched by the
Hixons as related to the “allegedly faulty repairs made in 1999,” were already
rejected as time barred by this Court in our prior opinion.  K2 and Tyco likewise argued that this Court’s
prior analysis of the effect of the 1999 inspections and repairs forecloses
this new claim.  We agree. 

In our
prior opinion, we held that the repairs made by the defendants in 1998 and 1999
“do not negate what the Hixons knew in mid-1997” about the “numerous” problems
causing leaking water in the house.  Hixon, 2006 WL 3095326, at *8.  We also held these repairs “do not toll the
discovery rule for plaintiffs and, thus, do not extend limitations.”  Id.
(citing PPG Indus., Inc. v. JMB/Houston
Ctrs. Partners Ltd. P’ship, 146 S.W.3d 79, 94 & nn. 81-82 (Tex. 2004)
and Richker v. United Gas Corp., 436
S.W.2d 215, 218-19 (Tex. App.—Houston [1st Dist.] 1968, writ ref’d
n.r.e.)).  

Although
the Hixons now contend a new and independent “breach of contract” claim arose
in 1999 based upon “faulty repairs and faulty assurances,” their pleading does
not allege any independent injury or damage flowed from the performance of
those repairs.  Rather, they complain
only that, based on the defendants’ promise to perform repairs, they were
induced to not timely sue the defendants. 
They do not seek separate damages arising from any action by the
defendants in 1999, but instead seek to toll limitations because they allegedly
“exercised forbearance in bringing suit against the Defendants in return for
the promise to repair all the damage to Plaintiffs’ home.”    

In our
prior opinion, we rejected that same theory couched as fraudulent concealment,
fraud, and misrepresentation claims.  As
the factual basis for those claims, the Hixons contended that “they were
assured, after Pedigo and K2 and Tyco made repairs to the house in 1998 and
1999, that there were no remaining problems with the house.”  Hixon,
2006 WL 3095326, at *9.  This Court noted
the lack of competent summary judgment evidence that a representative of
Pedigo, K2, or Tyco ever said the problems were fixed, and that “belief and
subjective thoughts are no evidence of false assurances, even if false
assurances can toll limitations.”  Id. (citing PPG Indus., Inc., 146 S.W.3d at 96).  

In
responding to the defendants’ motions for summary judgment, the Hixons point to
the supreme court’s observation in PPG
Industries that while a seller’s repair efforts do not extend the
limitations period for breach of warranty claims, the plaintiff does have an
independent DTPA claim based upon additional actionable conduct: 

Faulty repairs or false
assurances of repair are already independently actionable under current law—either
for breach of the implied warranty applicable to repair services, or as DTPA
laundry-list violations. Accordingly, consumers who discover defects and ask a
seller to repair them do not need to toll limitations on the initial warranty
claim, as they have a new limitations period relating to the repairs. 

PPG Indus., Inc., 146 S.W.3d at 95-96 (footnotes omitted).  The Hixons then cite Dallas Power & Light Co. v. Westinghouse Elec. Corp., for the
proposition that failure to make repairs is actionable as a breach of
contract.  855 F.2d 203, 208 (5th Cir.
1988).     

While PPG stands for the proposition that a
DTPA warranty or laundry-list violation claim might lie from faulty repairs of
earlier work, it does not support the Hixons’ argument that a new breach-of-contract
claim arises under these circumstances that operate to toll limitations for
their original breach-of-contract claim. 
The Hixons’ breach-of-contract claim is not an independent claim seeking
damages flowing from the defendants’ 1998-1999 repair efforts, but instead a
complaint about their failure to identify and remedy the original problems that
the Hixons have known about since at least 1997.  This Court has previously held the Hixons’
claims flowing from the original work to be barred by limitations, and that the
repair work performed in 1998 and 1999 did not operate to extend the
limitations period for that claim.  Hixon, 2006 WL 3095326, at *8.  By recasting the same facts into a new
breach-of-contract claim for failure to identify and repair all the existing
damage to the Hixons’ home, the Hixons seek to circumvent this Court’s prior
holding that, by mid-1997, the Hixons knew of significant water-leakage
problems with the house such that they were on notice of any potential
claims.  We hold that the breach-of-contract
claim, flowing from the original 1995 construction of the house, would have
accrued in mid-1997 at the latest, with limitations running mid-2000.  The Hixons’ breach-of-contract claim, brought
post-remand in 2008, is time-barred.  The
trial court’s summary judgment on that claim is affirmed.  

2.    
Fraud by Nondisclosure

The Hixons’ petition further
alleges that Pedigo committed “fraud by nondisclosure” by failing “to inform
Plaintiffs that the reason for the leaks at the Hixons’ home was due, in part,
to the failure of the roof that Defendant Pedigo had installed.”  Thus, the Hixons urge, “the statute of
limitations on their claim against Defendant Pedigo is tolled because Defendant
Pedigo had actual knowledge or should have known that the roofing system on
Plaintiffs’ home was not installed properly.”     

The Hixons assert K2 and Tyco
committed “fraud by nondisclosure” when their agent, after using a moisture
meter when inspecting the Hixons’ house in 1998, indicated that “the only areas
that he found to be problem areas were on the east wall of the Plaintiffs’
home.”  According to the Hixons, he
created a false impression by making a partial disclosure about problem areas
in their house and not disclosing the whole truth.   

The Hixons acknowledge that this
Court previously rejected their argument that fraudulent concealment operated
to equitably estop the defendants from asserting a limitations defense.  They assert, however, that “application of
the equitable doctrine [of] fraudulent concealment to the claims asserted in
Plaintiffs’ Fifth Amended Original Petition, which were not addressed by
summary judgment, and to the new claims asserted in Plaintiffs’ Fifth Amended
Original Petition, is not prohibited or limited by” this Court’s prior
opinion.  We disagree.   

In our prior opinion, we addressed
these same assertions regarding the defendants’ alleged fraudulent failure to
disclose to the Hixons the problems with their property.  Hixon,
2006 WL 3095326, at *9.  There we held that
the Hixons had not presented any competent summary judgment evidence “that any
defendant in fact had knowledge that a wrong occurred and the requisite fixed
purpose to conceal it and thus suppress the truth.”  Id.  We further concluded “as a matter of law,
that Pedigo and K2 and Tyco had no duty of disclosure.”  Id.

In their response to Pedigo’s
motion for summary judgment directed at Plaintiffs’ Fifth Amended Petition, the
Hixons point to deposition testimony of Pedigo’s employee explaining that the
various defendants met and, although they did not accept responsibility for the
problems with the Hixons’ house, they “were amenable to try to correct . . .
and try to remediate the situation and get it done.”  The Hixons claim that testimony “creates a
genuine issue of material fact for jury consideration, that a plan or design
existed between Defendant Pedigo, K2 and Tyco, and Ausmus Homes to avoid
litigation by making minimal repairs to the Hixons’ home, and fraudulently
concealing from the Hixons the true condition of their home.”  The Hixons further pointed to their expert’s
conclusion that the sheet metal flashing “was originally constructed in a
manner that incorporated extremely poor design and workmanship and resulted in
numerous defects,” and caused the Hixons’ roofing system to perform “below
recognized industry standards.”  Even if
the Hixons’ fraud-by-nondisclosure claim were not foreclosed by our prior
disposition of their fraudulent concealment claim, this evidence fails to raise
a fact issue on a fraud-by-nondisclosure theory.

In response to K2’s and Tyco’s
motion for summary judgment directed at Plaintiffs’ Fifth Amended Petition, the
Hixons argue that the defendants “conduct and erroneous moisture readings
conveyed a false impression to the Hixons.” 
We previously addressed this contention, concluding that “a failure to
find water-leakage problems does not equate, as a matter of law, to an
assurance that there are no other water-leakage problems.” Id.  The trial court’s
summary judgment on the Hixons’ fraud-by-nondisclosure theories was
proper.        

3.     Breach of Warranty              

The Hixons’ Fifth Amended Petition
asserts the defendants breached the following warranties: (1) a oral warranty
that the EIFS cladding would “perform its required function of providing
adequate protection from exterior environmental factors” for 20-25 years, (2) a
twelve-year warranty on the roof installed by Pedigo, (3) a three-year warranty
on roof installed by Pedigo, (4) a one-year written warranty issued by Pedigo
on the 1999 repairs to the east wall of the Hixons’ home, and (5) a four-year
implied warranty by Pedigo for the 1999 repairs to the east wall of the Hixons’
home.

 Pedigo’s motion for summary judgment did not
address any of these warranty claims specifically.  Instead, it relied generally on this Court’s
prior opinion to argue that limitations had necessarily run:

[T]he
First Court of Appeals held that the two-year statute of limitations on any
claims expired in mid-1999 and that the four-year statute of limitations –
which would have governed the common-law warranty claims – expired in mid-2001.  Therefore, even if Plaintiffs were able to
assert a common-law warranty claim on remand . . . the claim would be barred by
limitations, because the plaintiffs only filed their lawsuit in December 2001,
after the expiration of the four-year statute of limitations.  As such, summary judgment is warranted on the
common-law warranty claims.        

 

Tyco and K2 similarly argue in their motion for
summary judgment that, based on this Court’s prior opinion, any claim for
breach of warranty accrued in mid-1997, meaning the four-year statute of
limitations had run by mid-2001, before the Hixons filed suit. 

On appeal, the Hixons assert that
their warranty claims “were not barred by this Court’s earlier decision that
the Hixons should have discovered the problems with their home in 1997.”  As with their other claims, they assert that
fraudulent concealment should apply to all their warranty claims.  And they note that, “with the exception of
the Hixons’ express warranty claims against the Appellees, the Hixons’ current
claims allege a 1999 onset date.” 
In response, Pedigo, Tyco, and K2 again rely on this Court’s prior
opinion to argue that this Court previously held that any warranty claim
accrued in 1997 as a matter of law. 

Reliance by Pedigo, Tyco, and K2 on
this Court’s prior opinion as establishing that the Hixons’ breach-of-warranty
claims are barred by limitations is misplaced. 
While we held that some of the Hixons’ new claims were necessarily
time-barred as a matter of law because the defendants’ summary judgment arguments
as to other claims applied to these new claims, Hixon, 2006 WL 3095326, at *12, we remanded other claims—including those for breach of warranty—because the accrual date of these claims was
not previously established:

Pedigo’s
motion for traditional summary judgment did not address these claims, and their
discovery-rule arguments do not encompass these alleged onset dates.  Depending upon whether warranties were made
in 1995 or 1999, the Hixon’s warranty claims may be time barred.  However, by failing to address these
newly-asserted claims, Pedigo has failed to establish, as a matter of law, when
the Hixons’ warranty claims accrued. 
Accordingly, we must reverse the portion of the trial court’s judgment
that dismisses the Hixons’ DTPA warranty claims against Pedigo.    

 

Hixon, 2006 WL
3095326, at *11; see also id. at *12
(remanding warranty claims against Tyco and K2 because the Hixons’ pleading
contemplate several possible accrual dates for these claims, including 1995,
1998, and 1999, which the defendants had not negated).

Tyco and K2 additionally advance
the argument that the “Hixons have failed to provide any case law or evidence
that their breach of contract, breach of express and implied warranty, and
fraud by nondisclosure claims allow a different, later accrual date than that
previously determined by this Court” and object to “the Hixons’ reference to
unsigned warranties and portions of their Response to a Motion for Summary
Judgment as proof of breach of warranty.” 
This argument misconceives the parties’ respective burdens at the
summary-judgment stage.  The Hixons’
pleadings allege that numerous warranties of various lengths were given at
various times.  It is the burden of
Pedigo, Tyco, and K2, as the movants for summary judgment, to “prove their
affirmative defense by conclusively establishing the applicability of the
statute of limitations, including the date on which the limitations commenced.”
Knott, 128 S.W.3d at 220; see also Nowak v. DAS Inv. Corp., 110
S.W.3d 677, 680 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (holding that a
statute of limitations bar is an affirmative defense that must be conclusively
established by a traditional summary-judgment motion).  But here the defendants did not address the
Hixons’ various warranty theories or their accrual dates, other than to argue
that this Court already determined when these claims accrued.  

Because the defendants did not file
traditional or no-evidence motions for summary judgment challenging the
existence, validity, or scope of those warranties, their protestations that the
Hixons’ rely upon unsigned warranties is likewise misplaced.  We remand the Hixons’ breach-of-warranty
claims because the defendants have not carried their burden of proving, as a
matter of law, that these claims are time barred.  

D.  
The
Hixons’ Claims Subject to a Two-Year Statute of Limitations

 

In their third issue, the Hixons
argue that the “trial court erred when the court granted K2, Tyco, and Pedigo’s
summary judgment on the Hixons’ claims with a two year statute of limitations.”
 The Hixons’ Fifth Amended Petition
asserted against Pedigo, K2, and Tyco a claim for “negligent performance of
undertaking to render service,” and against K2 and Tyco only claims for 
(1) product liability, (2) negligent product design, and (3) negligent
distribution.  

1.    
Negligent performance of undertaking to render service

The Hixons’ negligent undertaking
theory is that, by undertaking the responsibility of doing repairs on the
Hixons’ home in 1999, the defendants had a duty to exercise reasonable care in
performing that work, which they allegedly breached.  In moving for summary judgment, Pedigo argued
that—based on the Hixons’ own allegations—the latest accrual date for their negligent undertaking
would be mid-1999 because the defendants’ “undertaking”—i.e., repair work—was completed by then.  Although
Pedigo asserts that by “mid-1999, Plaintiffs were again complaining of moisture
intrusion, meaning that is the latest possible time their cause of action could
have accrued,” it cites nothing in support of that factual assertion.  Without any discussion of the underlying
factual basis for the Hixons’ negligent undertaking claims, Tyco and K2 argued
in their motion for summary judgment that this Court’s prior opinion
established that all the Hixons’ tort claims—including for negligent undertaking—accrued in 1997.    

In addition to arguing that fraudulent
concealment applies, the Hixons responded to the defendants’ motions for
summary judgment by asserting that Pedigo did not prove that their negligent
undertaking claim accrued in mid-1999, and they point to evidence that Pedigo
was still making repairs to the home in 2000. 
In response to Tyco’s and K2’s motion for new trial on their negligent
undertaking claim, the Hixons rely on the theory of fraudulent concealment to
argue that the defendants’ conduct in inspecting the house in 1998 and
repairing the house in 1999 raised a fact issue about whether the Hixons’ reasonably
relied on the defendants’ failure to disclose the entire truth about the
condition of their house.    

On appeal here, the Hixons again
assert that Pedigo failed to cite any summary judgment evidence in support of a
mid-1999 accrual date, and that the fraudulent concealment doctrine tolled the
limitations period for their negligent undertaking claims against Pedigo, Tyco,
and K2.  In response, Pedigo argues that
this Court’s prior opinion established that the Hixons’ claim accrued in 1997
when the Hixons are deemed to have discovered problems with water leaks, and
that attempts to fix those water leaks cannot form the basis of a later
negligent undertaking claim. 
Alternatively, Pedigo argues that mid-1999 is the “latest possible time
their cause of action could have accrued” because by “mid-1999, Appellants were
again complaining of moisture intrusion.”[2]  Tyco and K2 argue that this Court’s opinion
establishes an accrual date of 1997, and that “the Hixons failed to produce any
evidence of a different or later date of accrual.” 

Contrary to defendants’ assertions
otherwise, our prior opinion did not hold that the Hixons’ negligent
undertaking claim accrued in 1995.  The
Hixons’ petition alleges that this claim is based upon work Pedigo, Tyco, and
K2 began in 1999.  It might be, based on
the evidence, that these claims are time barred, but the defendants have not
carried their burden to establish as much. 
Thus, we reverse the summary judgment on the Hixons’ negligent
performance of undertaking to render service claims against Pedigo, Tyco and K2
and remand these claims to the trial court. 


2.    
Product liability

The Hixons’
Fifth Amended Petition alleges that Tyco and K2 are liable under theories of
(1) strict tort product liability, (2) negligent product design, and (3)
negligent distribution.  In their motion
for summary judgment, defendants Tyco and K2 argued that these claims all
accrued in mid-1997, when this Court determined that the Hixons’ other tort
claims accrued.  In response, the Hixons alleged
that fraudulent concealment and fraud by nondisclosure estops the defendants
from relying on limitations as a defense, and that their claims were brought
within the fifteen-year statute of repose. 

On appeal,
the Hixons offer no specific argument or authority in support of their
assertion that the trial court erred by granting summary judgment as to their
product liability claims.  Instead, their
brief states that they “incorporate by reference the arguments to all preceding
issues, and the evidence, argument, and authority contained in the Court Record
containing the Hixons’ summary judgment responses as if stated verbatim
herein.”  In response, Tyco and K2 argue
that this Court previously found that the Hixons’ prioduct liability claims
accrued in 1997 and that the “Hixons have failed to produce any evidence of a
different or later date of accrual.”   

We do not
consider arguments advanced only in the trial court and incorporated by
reference into appellate court briefing. 
Guerrero v. Tarrant Cnty.
Mortician Servs. Co., 977 S.W.2d 829, 832-33 (Tex. App.—Fort Worth 1998,
pet. denied).  We do, however, interpret
the Hixons’ attempt to “incorporate by reference the argument to all preceding
issues” in their appellant’s brief to incorporate the argument—made throughout their brief—that this Court’s prior opinion did not, as
Tyco and K2 insists, establish a 1997 accrual date for the Hixons’ remanded
claims, which include their product liability claims.  In our prior opinion, we explained that our
holding that the Hixons’ claims accrued by 1997 did not encompass these claims:

The same reasoning does not apply, however,
to their claims for products liability, strict tort liability, negligent
product design, [and] negligent product distribution . . . . K2 and Tyco did
not address these claims, or any discovery-rule implications of these claims,
in moving for traditional motion for summary judgment, and their discovery-rule
and limitations bar contentions do not encompass an onset date for these newly
asserted claims.  Again, the Hixons’ live
pleadings contemplates several possible accrual dates for these causes of
action.  Specifically, the EIFS product
was initially installed in 1995, the house was inspected in 1998, and the EIFS
was reinstalled in 1999.  K2 and Tyco, by
not responding to the newly-asserted claims, failed to establish, as a matter
of law, the accrual date of these causes of action.  

 

Hixon, 2006 WL 3095326, at *12.  Tyco and K2 did not attempt to establish the
accrual date for these claims in their motion for summary judgment or in their
briefing here.  As we noted in our
previous opinion, the EIFS was reinstalled at some point in 1999, but Tyco and
K2—arguing only that these
claims accrued in 1997—have failed
to carry their burden of establishing as a matter of law when these claims
accrued.  While our prior opinion’s
discovery rule analysis applies to claims arising from the original house
construction and the original installation of the EIFS, the same is not true of
any EIFS installed in later years.  We thus
reverse the trial court’s summary judgment as to the Hixons’ claims for strict
tort product liability, negligent product design, and negligent product distribution
related to any EIFS installed subsequent to the original construction of the
home and remand these claims to the trial court.

E.  
Misnomer   

In their
fourth issue, the Hixons argue that the “trial court committed error in
dismissing the Hixons’ lawsuit against K2 and Tyco when as a matter of law the
lawsuit was filed against Tyco on December 7, 2001.”  In this Court’s prior opinion, we correctly
noted that the Hixons sued Pedigo on December 7, 2001, but incorrectly stated
that K2 and Tyco were not added as defendants until June 28, 2002.  Hixon,
2006 WL 3095326, at *2.  The record
reflects that Tyco was actually sued in the Hixons’ December 7, 2001 petition,
and the claims against K2 were added in June 2002.  Our misstatement as to the date Tyco was sued
was not relevant to the disposition of the earlier appeal, because the claims
as to which we affirmed summary judgment were barred under either date, and the
remaining claims were remanded for determination of the accrual dates.  

In Tyco’s
and K2’s motion for summary judgment, they allege that the Hixons “filed suit
against these Defendants on June 28, 2002.” 
In response, the Hixons’ pointed out that they had sued Tyco in 2001,
and additionally argued that their 2002 claim against K2 should relate back to
2001 because they added K2 as soon as Tyco filed disclosures stating “K2 was
the correct corporate name of Finestone.” 
They asserted that their naming only Tyco was a misnomer and,
alternatively, even if it amounted to a misidentification of the correct
defendant, no defendant was “misled or disadvantaged by the error.”  

On appeal,
the Hixons reiterate that they sued Tyco in 2001 and again argue that through
the application of the misnomer or misidentification doctrine, the 2002 filing
against K2 should relate back.  In
support, they cite Pierson v. SMS
Financial, which explains: 

There is a distinction
between misnomer and misidentification. Enserch
Corp. v. Parker, 794 S.W.2d 2, 4-5 (Tex. 1990); Hernandez v. Furr’s Supermarkets, Inc., 924 S.W.2d 193, 196 (Tex. App.—El
Paso 1996, writ denied).  Misidentification
is when the party named in the pleading is not the party with an interest in
the suit.  Misnomer is when a party
misnames either himself or the opposing party in a pleading, but the correct
parties are involved.  Typically, this
happens when a plaintiff misnames a defendant in his petition.  When this happens, the impact on the statute
of limitations depends on whether the mistake was a misidentification or a
misnomer.  If a plaintiff misnames the
correct defendant, then the statute of limitations is tolled and a subsequent
amendment of the petition relates back to the date of the original petition.  If the plaintiff is mistaken as to which of
two defendants is the correct one and there is actually existing a defendant
with the name of the erroneously named defendant, then the plaintiff has sued
the wrong party and limitations is not tolled. Enserch Corp. v. Parker, 794 S.W.2d at 4-5; Hernandez v. Furr’s Supermarkets, Inc., 924 S.W.2d at 196.  The main distinction between misidentification
and misnomer is whether the correct party received notice of the suit.  Hernandez
v. Furr’s Supermarkets, Inc., 924 S.W.2d at 196.  The main reason that the statute of
limitations is tolled in cases of misnomer is that the party intended to be
sued has been served and put on notice that he is the intended defendant.  Dougherty
v. Gifford, 826 S.W.2d 668, 676 (Tex. App.—Texarkana 1992, no writ); Braselton-Watson Builders, Inc. v. Burgess,
567 S.W.2d 24, 28 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

959 S.W.2d 343, 347 (Tex.
App.—Texarkana 1998, no pet.).  The
Hixons additionally note that when a defendant is not disadvantaged or misled,
limitations may be tolled even with the plaintiff misidentifies a party.  See
Palmer v. Enserch Corp., 728 S.W.2d 431, 434 (Tex. App.—Austin 1987, writ
ref’d n.r.e.). 

Tyco and K2
concede in their brief that the Hixons sued Tyco on December 7, 2001, but argue
that limitations have run as to all the Hixons’ claims, including those brought
in December 2001.  These defendants also contend
that the misnomer doctrine should not apply, and they do not respond to the
Hixons assertion that, limitations should be tolled even if the Hixons’ failure
to sue K2 earier was the result of misidentification rather than misnomer.

These
arguments have not been addressed by the trial court.  We do not have a record before us to
determine whether applying the misnomer doctrine would be appropriate.[3]  Moreover, we need not resolve the issue in
this appeal because it only becomes relevant if the trial court, on remand,
determines that claims brought in December 2001 are timely but the ones brought
in July 2002 are not.  For these reasons,
we leave it to the trial court on remand to address this issue in the first
instance, if necessary given the trial court’s accrual determinations.

F.   
Objections
to Summary Judgment Evidence and the Hixons’ Motion for New Trial

In their fifth issue, the Hixons
argue that the “trial court abused its discretion when the trial court refused
to grant a new trial for the Hixons against K2 and Tyco, and committed error by
not ruling on the objections raised by the Hixons to Pedigo’s summary judgment
evidence and granting a new trial.  

The Hixons’ response to Pedigo’s
motion for summary judgment included three “formal objections to Defendant
Pedigo’s summary judgment motion and exhibits.” 
The Hixons cite nothing in support of their allegation that they timely
brought their request for a written ruling on their objections to the trial
court and that the trial court nonetheless refused to rule.  In any event, a ruling on their objections
would not impact the trial court’s or this Court’s disposition.  The Hixons’ other arguments in support of a
new trial have already been addressed elsewhere in this opinion in response to
the Hixons’ first four issues.   We
overrule the Hixons’ fifth issue.  

Conclusion

We reverse
and remand the trial court’s summary judgment as to the Hixons’ (1)
breach-of-warranty and negligent undertaking claims against Pedigo, Tyco and
K2, and (2) strict tort product liability, negligent product design and
negligent distribution claims against Tyco and K2, only to the extent these
claims relate to installation of EIFS occurring subsequent to the original
construction of the Hixons’ home.  We
also remand to the trial court the Hixons’ claim that their suit against K2 relates
back to the filing of their suit against Tyco under misnomer and
misidentification theories for consideration by that court in the first
instance.  In all other respects, we
affirm the trial court’s judgment.           

 

 

 

 

                                                                   Sherry
Radack

                                                                   Chief Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland.

 











[1]           According to the Hixons’ allegations, defendant Tyco
International acquired K2’s Finestone division after the EIFA cladding was
installed on their house.  [Id.]





[2]
          In support of this factual
contention, however, Pedigo cites only his unsupported allegations in his
motion for summary judgment.  





[3]
          For example, the Hixons rely on Pierson’s statement that the misnomer
doctrine may apply when a company is sued in the name of a “related but
separate company.”  The record, however,
does not reflect in what way K2 and Tyco are related, if at all.