**Donald PIERSON and Kenneth
L. Ross, Appellants,**

v.

**SMS FINANCIAL II, L.L.C., Appellee.**

No. 06-97-00059-CV.

Court of Appeals of Texas,
Texarkana.

Submitted Nov. 25, 1997.

Decided Jan. 7, 1998.

Rehearing Overruled Feb. 3, 1998.

Richard L. Jackson, Richard Jackson & Associates, Dallas, for Appellants.

Michael P. Hutchens, John B. Schorsch, Mastrogiovanni, Schorsch, Mersky, Dallas, for Appellee.

Lew Dunn, Longview, for Garnishee Longview Bank & Trust.

Before CORNELIUS, C.J., GRANT, J., and T.C. CHADICK, J., Supreme Court of Texas, Retired, Sitting by Assignment.

## OPINION

CORNELIUS, Chief Justice.

Donald Pierson and Kenneth L. Ross appeal from an adverse judgment in a suit on a promissory note brought by SMS Financial II, a limited liability corporation.

Pierson and Ross signed a real estate lien note in 1982 to Bank of Longview, promising

to pay the principal sum of $350,000.00 plus interest. Pierson and Ross also executed a deed of trust conveying to the trustee, for the benefit of the bank, certain property as security for the debt. The Bank of Longview assigned the note in 1985 to Texas American Bank–Town North, which later merged into and became part of Texas American Bank–Longview, N.A. That bank was declared insolvent, and the FDIC was appointed as its receiver. The FDIC assigned the note to Texas American Bridge Bank, N.A. In 1989 Texas American Bridge Bank was merged into Deposit Guaranty Bank, which changed its name to Team Bank. Team Bank foreclosed on the real estate after the note became in default in 1991 and recovered $167,620.00 from the foreclosure sale. Team Bank then filed suit against Pierson and Ross to recover the balance of the note. The FDIC reacquired the note from Team Bank. SMS then purchased the note from the FDIC, and the FDIC assigned to SMS all its interest in the note, as well as all claims asserted by Team Bank in this lawsuit. In January of 1996, SMS Financial I substituted itself as the sole plaintiff in the suit to recover on the note and removed Team Bank as a plaintiff. In May of 1996, SMS Financial II filed a pleading in the suit, alleging that it owned the note, and substituted itself as the sole plaintiff in the suit. SMS I and SMS II are two separate limited liability corporations. SMS II, rather than SMS I, owned the note.

SMS filed a motion for partial summary judgment, which the court granted. In so doing, the trial court held that: (a) SMS had established its standing as owner and holder of the note; (b) SMS II's claim was not barred by the statute of limitations; and (c) all affirmative defenses and counterclaims pleaded by Pierson and Ross were barred as a matter of law. The only issue remaining, which was tried to a jury, dealt with Pierson's and Ross's claims regarding the fair market value of the collateral at the time of the foreclosure, the amount found by the jury to be due on the promissory note, and the amount of attorney's fees for SMS. The jury returned a verdict for SMS in the amount of $102,048.95 for principal, $41,000.00 for attorney's fees, $5,000.00 for appellate attorney's fees, $59,635.40 for prejudgment interest,

and post-judgment interest at ten percent per annum.

Pierson and Ross raise nine points, alleging error in four general areas: (1) SMS's claims are barred by the statute of limitations; (2) the trial court erred in rendering summary judgment that SMS established as a matter of law that it was the owner of the note, that Pierson and Ross could not produce evidence of their affirmative defenses and counterclaims because of the *D'Oench, Duhme* doctrine, and that Pierson and Ross could not recover their attorney's fees; (3) the trial court erred in admitting alleged hearsay evidence to show the amount due on the note, admitting in evidence a copy of the note without proof that the original was lost, and admitting evidence of the foreclosure because it contradicted judicial admissions made by SMS; and (4) the judgment of March 18, 1997 is not a final judgment. We overrule these contentions and affirm the judgment.

Pierson and Ross first contend that the trial court erred in ruling that the statute of limitations had not run on SMS's claim, because its first pleading was filed well after the running of the statute of limitations and because there was no evidence that would allow SMS to tack its claim to any previously filed claim. They argue that the statute of limitations began to run on July 20, 1989, the date that Texas American Bank–Longview, N.A. failed and was declared insolvent, and so on July 20, 1995, six years later, the statute barred any suit that had not already commenced. On this date, Team Bank was the only plaintiff in the suit, and it was only the claim of Team Bank that avoided the limitations bar. SMS I substituted itself as the sole plaintiff in January of 1996 and removed Team Bank as a plaintiff. SMS *II* first entered the suit in May of 1996 after it filed a pleading entitled "Plaintiff's Second Amended Petition," and substituted itself as the sole plaintiff. When SMS II first entered the suit in May of 1996, the claim was barred by limitations unless SMS II could tack its claim to the time when Team Bank originally filed the suit. Team Bank had not been a party to the suit for almost four months at the time SMS II joined. Basical-

ly, Pierson and Ross argue that SMS II misidentified itself and was not a party to the suit until after the statute of limitations ran; thus, it should have been barred from prosecuting its claim. Conversely, SMS II argues that it simply misnamed itself, and since Pierson and Ross had notice of the claim and all relevant facts within the statute of limitations period, the statute of limitations was tolled and SMS II was properly allowed to assert its claim.

■ There is a distinction between misnomer and misidentification. *Enserch Corp. v. Parker*, 794 S.W.2d 2, 4–5 (Tex.1990); *Hernandez v. Furr's Supermarkets, Inc.*, 924 S.W.2d 193, 196 (Tex.App.—El Paso 1996, writ denied). Misidentification is when the party named in the pleading is not the party with an interest in the suit. Misnomer is when a party misnames either himself or the opposing party in a pleading, but the correct parties are involved. Typically, this happens when a plaintiff misnames a defendant in his petition. When this happens, the impact on the statute of limitations depends on whether the mistake was a misidentification or a misnomer. If a plaintiff misnames the correct defendant, then the statute of limitations is tolled and a subsequent amendment of the petition relates back to the date of the original petition. If the plaintiff is mistaken as to which of two defendants is the correct one and there is actually existing a defendant with the name of the erroneously named defendant, then the plaintiff has sued the wrong party and limitations is not tolled. *Enserch Corp. v. Parker*, 794 S.W.2d at 4–5; *Hernandez v. Furr's Supermarkets, Inc.*, 924 S.W.2d at 196. The main distinction between misidentification and misnomer is whether the correct party received notice of the suit. *Hernandez v. Furr's Supermarkets, Inc.*, 924 S.W.2d at 196. The main reason that the statute of limitations is tolled in cases of misnomer is that the party intended to be sued has been served and put on notice that he is the intended defendant. *Dougherty v. Gifford*, 826 S.W.2d 668, 676 (Tex.App.—Texarkana 1992, no writ); *Braselton–Watson Builders, Inc. v. Burgess*, 567 S.W.2d 24, 28 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

In this case, the actual plaintiff (SMS II) misnamed itself, and instead named another entity (SMS I). We find this to be a misnomer. Thus, the petition related back to the original, and the statute did not bar the claim.

■ Even if the mistake can be considered a misidentification, we conclude that limitations would not bar the claim in the context of this action. The purpose behind statutes of limitations is to compel a party to file suit within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available and the evidence is fresh. *Willis v. Maverick*, 760 S.W.2d 642 (Tex.1988); *Continental S. Lines, Inc. v. Hilland*, 528 S.W.2d 828, 831 (Tex. 1975); *Dougherty v. Gifford*, 826 S.W.2d at 677; see also 2 McDonald Texas Civil Practice § 9:61 (rev.1992). A timely petition preserves this purpose when it gives fair notice of the suit to the opposing party. *Ealey v. Insurance Co. of N. Am.*, 660 S.W.2d 50, 52 (Tex.1983). Indeed, the statute of limitations should not apply in circumstances where no party is misled or disadvantaged by the error in pleading. *Dougherty v. Gifford*, 826 S.W.2d at 677; *Palmer v. Enserch Corp.*, 728 S.W.2d 431, 434 (Tex.App.—Austin 1987, writ ref'd n.r.e.). Further, the harshness of the statutes of limitations should be tempered when the proper defendant was knowledgeable of the facts and was not misled or placed at a disadvantage in obtaining relevant evidence to defend the suit. *Castro v. Harris County*, 663 S.W.2d 502, 505 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd); *Howell v. CocaCola Bottling Co. of Lubbock, Inc.*, 595 S.W.2d 208, 212 (Tex.Civ.App.—Amarillo), *writ ref'd n.r.e. per curiam*, 599 S.W.2d 801 (Tex.1980). Moreover, the misnomer in this case was that of the *plaintiff*, not the defendant. *See Womack Mach. Supply Co. of Houston v. Fannin Bank*, 499 S.W.2d 917, 920 (Tex.Civ.App.—Houston [14th Dist.] 1973), *rev'd on other grounds*, 504 S.W.2d 827 (Tex.1974). *Womack's* reasoning on the statute of limitations issue was approved by the Texas Supreme Court. *Womack Mach. Supply Co. of Houston v. Fannin Bank*, 504 S.W.2d 827. Additionally, this reasoning has been used and cited by the Supreme Court in

the workers' compensation area. *See Ealey v. Insurance Co. of N. Am.*, 660 S.W.2d 50. The court held that bringing suit in the name of the parent company instead of its subsidiary tolled the statute of limitations because the defendant was not misled or disadvantaged by the error. *Id.* at 53. The court reasoned that the original petition naming the wrong plaintiff, when considered in its entirety, gave the defendant fair notice. *Id.* at 52–53.

In this case, the correct defendants were sued in the correct court, and they knew the allegations, facts, and circumstances that founded the claim against them. They had proper notice of the claim being asserted against them within the statute of limitations. Consequently, they had no disadvantage in obtaining relevant evidence to defend the suit against SMS II simply because the original petition named SMS I. We find that SMS II's amended petition related back to the original petition and thus tolled the statute of limitations.

In their second through fifth points, Pierson and Ross contend that the trial court erred in granting SMS's motion for partial summary judgment. We have, however, a deficient record on appeal. The Rules of Appellate Procedure place on the clerk of the district court the responsibility of preparing, certifying, and timely filing the clerk's record. Tex.R.App. P. 35.3. In civil cases, the clerk's record must only include copies of all pleadings on which the trial was held, unless the parties designate other filings. Tex. R.App. P. 34.5(a)(1). Pierson and Ross designated only Pierson's response to SMS's motion for partial summary judgment. That response does little more than incorporate Ross's response to SMS's motion for partial summary judgment and does not repeat or reference specifically any of Ross's arguments, authorities, or summary judgment evidence. Pierson and Ross did not designate Ross's response for inclusion in the clerk's record, and it is not included.

■■■ Without a complete clerk's record, we must presume that the evidence before the trial court supports its judgment. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 689 (Tex.1990); *Simon v. York Crane & Rig-*

*ging Co.*, 739 S.W.2d 793, 795 (Tex.1987); *Murray v. Devco, Ltd.*, 731 S.W.2d 555, 557 (Tex.1987); *Conely v. Peck*, 929 S.W.2d 630 (Tex.App.—Austin 1996, no writ). Because Pierson and Ross failed to include Ross's response to the motion for summary judgment, we must presume that it supports the summary judgment. In other words, we must review the summary judgment as if Ross did not respond to the motion.

■■■ The nonmovant is not required to file a response to defeat a motion for summary judgment because deficiencies in the movant's own proof or legal theories might defeat its right to judgment as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). Even if the nonmovant never files a response, a summary judgment may be reversed if the motion is not in the proper form with proper supporting proof as required by Tex.R.Civ. P. 166a. *Wasson v. Stracener*, 786 S.W.2d 414, 416 n. 1 (Tex.App.—Texarkana 1990, writ denied). But if the nonmovant fails to file a response, the only ground for reversal he can raise on appeal is to attack the legal sufficiency of the movant's summary judgment proof. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d at 678.

■■■ The trial court granted partial summary judgment on basically two issues. The first was that SMS was the owner and holder of the note. To support this contention, SMS presented an affidavit from its custodian of records that the FDIC assigned and transferred the note to it and that it owned the note. Attached to this affidavit was a copy of the note, which included sworn testimony that the copy was a true and correct copy of the original. A photocopy of a note attached to the affidavit of a party who swears it is a true and correct copy is proper summary judgment evidence. *Zarges v. Bevan*, 652 S.W.2d 368, 369 (Tex.1983). Also, an accompanying affidavit which, absent controverting summary judgment proof, avers that a plaintiff is the owner and holder of the note is sufficient as a matter of law to prove the plaintiff's status as the owner and holder of the note. *Id.*; *Bean v. Bluebonnet Sav. Bank FSB*, 884 S.W.2d 520, 522–23 (Tex.

App.—Dallas 1994, no writ); *Fimberg v. Federal Deposit Ins. Corp.*, 880 S.W.2d 83, 85–86 (Tex.App.—Texarkana 1994, writ denied).

Additionally, both Pierson's and Ross's first amended answers and counterclaims contained attestations of the chain of title on the note from its inception to its transfer to Team Bank, SMS's predecessor in interest. Thus, their own pleadings conclusively established the note's chain of title through and including SMS's predecessor in interest. The only missing link in the chain of title was from SMS's predecessor in interest to SMS itself. This last link was fulfilled by the affidavit from the custodian, which showed that SMS purchased the note from its predecessor in interest. Any fact admitted in a party's pleading is conclusively established in the case without the introduction of the pleadings or presentation of other evidence. *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex.1983). There is legally sufficient evidence to support the trial court's summary judgment on the issue that SMS was the holder and owner of the note and had authority to bring the suit.

 The second point on which the trial court granted summary judgment is that Pierson's and Ross's defenses and counterclaims were invalid. We should note that a trial court's conclusions of law are given no particular deference by an appellate court. *Pulido v. Dennis*, 888 S.W.2d 518 (Tex. App.—El Paso 1994, no writ); *Sears, Roebuck and Co. v. Nichols*, 819 S.W.2d 900, 903 (Tex.App.—Houston [14th Dist.] 1991, writ denied). An appellate court has the power and the duty to independently evaluate the legal determinations of the trial court. *Id.* The trial court ruled that Pierson's and Ross's affirmative defenses, as well as their counterclaim of wrongful taking of their real property and their counterclaim for attorney's fees are barred by the doctrine of *D'Oench, Duhme. See D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (codified in 12 U.S.C.A § 1823(e) (West 1987)).

 Under the *D'Oench, Duhme* doctrine, no agreement that tends to diminish the interest of a financial institution under federal receivership is valid unless: (1) it is in writing; (2) it was contemporaneously executed by the depository institution and the person claiming the adverse interest; (3) it was approved by the board of directors or loan committee; and (4) from the time of its execution it has been continuously a record of the financial institution. *Bluebonnet Sav. Bank v. Jones Country, Inc.*, 911 S.W.2d 871, 873 (Tex.App.—Beaumont 1995), *rev'd on other grounds*, 920 S.W.2d 670 (Tex.1996). The doctrine prevents a person who has dealt with a failed institution from relying on unwritten agreements with the bank as a defense to the enforcement of a facially valid obligation. *Commonwealth Land Title Ins. Co. v. Nelson*, 889 S.W.2d 312, 319 (Tex. App.—Houston [14th Dist.] 1994, writ denied). The United States Supreme Court has announced that this doctrine serves three purposes: (1) it allows federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets without being concerned that an asset of the bank is encumbered by some unrecorded agreement; (2) it ensures mature consideration of unusual loan transactions by senior bank officials; and (3) it prevents the fraudulent insertion of new terms, with the collusion of the bank employees, when a bank appears headed for failure. *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 91–92, 108 S.Ct. 396, 401–02, 98 L.Ed.2d 340. Although the doctrine originated as a protection for the FDIC against oral agreements between a failed bank and a borrower, the extent of its protection has been expanded. *See Bowen v. Federal Deposit Ins. Corp.*, 915 F.2d 1013, 1015 (5th Cir.1990); *Kilpatrick v. Riddle*, 907 F.2d 1523, 1527 (5th Cir.1990); *Commonwealth Land Title Ins. Co. v. Nelson*, 889 S.W.2d at 320.

 The protections of the *D'Oench, Duhme* doctrine do not end with the FDIC; they extend to the assignee of the FDIC. *McDonald v. Foster Mortgage Corp.*, 834 S.W.2d 573 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Jones v. Resolution Trust Corp.*, 828 S.W.2d 821, 822–23 (Tex. App.—Fort Worth 1992, writ denied); *NCNB Texas Nat'l Bank v. Campise*, 788 S.W.2d 115, 118–19 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Here, SMS

purchased the debt from the FDIC and is thus an assignee of the debt and is entitled to the doctrine's protection. Pierson's and Ross's defenses of estoppel, fraud, failure to mitigate damages, accord and satisfaction, payment, waiver, laches, and failure of consideration are all barred by the *D'Oench, Duhme* doctrine, as are their counterclaims for attorney's fees based on bad faith and their counterclaims for wrongful taking. *Bluebonnet Sav. Bank v. Jones Country, Inc.*, 911 S.W.2d at 873; *Commonwealth Land Title Ins. Co. v. Nelson*, 889 S.W.2d at 321 n. 4; *Stiles v. Resolution Trust Corp.*, 831 S.W.2d 24, 28 (Tex.App.—Dallas 1992), *rev'd on other grounds*, 867 S.W.2d 24 (Tex. 1993). Thus, the court properly rendered summary judgment on these issues.

Pierson and Ross also complain because the trial court admitted in evidence allegedly hearsay evidence to establish the amount due on the note. We find that the amount due on the note was proven by competent evidence from several sources that were not hearsay.

Next, Pierson and Ross assert that the trial court erred in ruling that a copy of the note that was incomplete on its face was admissible in evidence, when the evidence raised a question as to the authenticity of the original and created circumstances that made it unfair to admit the duplicate.

■ We find no error in this regard. The court had already granted SMS a partial summary judgment that established the existence of the note, the original balance of the note, the makers of the note, that SMS II was the owner of the note, and that Pierson and Ross had defaulted on the note. The only issue at trial was the amount due on the note after the offsets and credits. Issues determined on a motion for partial summary judgment are final and cannot be relitigated unless the trial court sets the judgment aside or the summary judgment is reversed on appeal. *Martin v. First Republic Bank, Fort Worth, N.S.*, 799 S.W.2d 482, 488–89 (Tex.App.—Fort Worth 1990, writ denied). Any issue regarding authenticity of the note was resolved by the summary judgment. This issue should have been raised during the summary judgment proceeding, and not at trial after the issue had already been decided.

■ Pierson and Ross also contend that the trial court should have excluded exhibits and testimony offered by SMS to establish a foreclosure of the real property because SMS in its pleadings had judicially admitted contrary facts. SMS originally alleged in their pleadings that the foreclosure sale was conducted on the courthouse steps of Rockwall County, Texas on May 10, 1991. At trial, SMS offered evidence that the foreclosure sale occurred at the Gregg County Courthouse on August 6, 1991. Further, the first question in the charge contained an inquiry regarding the value of the property on August 6, 1991.

■ Pierson and Ross contend that SMS's pleadings constitute judicial admissions and that evidence contradicting those admissions was improperly admitted. A statement must meet five criteria for it to be considered a judicial admission and for it to be conclusive against a party. Those five criteria are: (1) the declaration must have been made in the course of a judicial proceeding; (2) the statement must be contrary to an essential fact embraced as a theory of recovery or defense by the party asserting the same; (3) the statement must be deliberate, clear, and unequivocal; (4) the statement must relate to a fact on which judgment for the opposing party may be based; and (5) the court's granting of conclusive effect must be consistent with public policy. *Griffin v. Superior Ins. Co.*, 161 Tex. 195, 338 S.W.2d 415, 418–19 (1960); *Pako Corp. v. Thomas*, 855 S.W.2d 215 (Tex.App.—Tyler 1993, no writ); *Miller v. Mac Gann*, 822 S.W.2d 283, 288 (Tex.App.—Houston [1st Dist.] 1991), *writ denied per curiam*, 842 S.W.2d 641 (Tex.1992).

Under the *Griffin* five-part test, the statement must be contrary to an essential fact embraced as a theory of recovery or defense by the party asserting the same. In this case, Pierson and Ross never asserted a claim or defense that the foreclosure sale did not take place where SMS contended, nor did they claim that the foreclosure was deficient in any respect. Thus, the mechanical facts regarding the foreclosure sale were irrele-

vant to the issues before the trial court. The only essential issue regarding the foreclosure sale was the fair market value of the property at a date certain. Because the date and location of the foreclosure sale were not relevant to the issues at trial, the ancillary statements in SMS's petition were not contrary to an essential fact embraced as a theory of recovery. Consequently, the statements do not qualify as judicial admissions, and the trial court properly admitted the evidence about the foreclosure.

 There was a discrepancy between the pleadings and the evidence at trial. Ideally, SMS should have made a motion for a trial amendment and corrected the date and location of the foreclosure sale. A variance between a party's pleadings and proof does not automatically require reversal. 2 MC-DONALD TEXAS CIVIL PRACTICE § 7.32[b] (rev. 1992). Indeed, a variance is immaterial when it is so insubstantial that it would not mislead, surprise, or otherwise prejudice the opponent. *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 186 (Tex.1977). Pierson and Ross have not shown that they were prejudiced, surprised, or misled by the pleading defect.

Lastly, Pierson and Ross contend that the trial court erred in ruling that its March 18, 1997 judgment, after a trial on the merits, was final and would allow immediate execution to enforce it because the judgment did not dispose of all parties and all issues before the court. Specifically, they argue that because the judgment did not dispose of their counterclaims, it was not a final judgment. We disagree. After a trial on the merits all pleaded issues are presumed to be disposed of by the trial court's judgment absent a contrary showing in the record. *Allen v. Allen*, 717 S.W.2d 311, 312 (Tex. 1986); *Vance v. Wilson*, 382 S.W.2d 107, 108 (Tex.1964). Moreover, even if a judgment grants part of the relief requested but omits other relief put in issue by the pleadings, the judgment will be construed as settling all issues by implication. *Allen v. Allen*, 717 S.W.2d at 312. The defendants have not pointed in the record to any indication that the judgment was not final.

Pierson and Ross rely on one case to support their contention. They cite *Mafrige v. Ross*, 866 S.W.2d 590 (Tex.1993). *Mafrige* is inapposite because it is a summary judgment case, and summary judgments do not have the presumption of finality. *Id.* *Mafrige* holds that if a summary judgment contains a "Mother Hubbard" clause, the court will presume that the judgment disposed of all claims and all parties. *Id.*

For the reasons stated, the judgment is affirmed.

ROSS, J., not participating.