**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed June 2, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00727-CV

---

**KIPP, INC., ST. LUKE'S UNITED METHODIST CHURCH OF HOUSTON, LEGACY COMMUNITY HEALTH SERVICES, YMCA OF GREATER HOUSTON, JULIUS WILLIAM "BILL" BOYAR, III, BOYAR & MILLER, P.C. D/B/A BOYAR MILLER, AND KIMBERLY STERLING ASSOCIATES, INC. D/B/A STERLING ASSOCIATES, Appellants**

**V.**

**GRANT ME THE WISDOM FOUNDATION, INC., INDIVIDUALLY AND IN THE RIGHT OF CONNECT@6800 BELLAIRE, INC., AND CONNECT@6800 BELLAIRE, INC., Appellees**

---

**On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2017-62715**

---

## OPINION

In this lawsuit among nonprofit organizations, we address whether the Texas Citizen's Participation Act (TCPA) should bar claims involving the development

of a community center.[1] Concluding the TCPA applies to all but three legal malpractice claims and appellants established a valid defense to the remaining claims, we affirm in part and reverse and remand in part the trial court's order denying the defendants' TCPA motion to dismiss.

## *Background*

Connect@6800 Bellaire, Inc. (Connect) is a nonprofit corporation that consisted of members Grant Me the Wisdom Foundation, Inc. (Foundation) and nonprofit appellants KIPP, Inc., St. Luke's United Methodist Church of Houston, Legacy Community Health Services, and YMCA of Greater Houston (collectively, Nonprofit Appellants). Connect was formed to develop a community center that would provide education, healthcare, and social services to an underserved community in Houston, Texas. Lawyers at Boyar & Miller, P.C. drafted Connect's formation documents, and lawyers at Kimberley Sterling Associates, Inc. were hired to help create Connect, develop plans for the community center, and plan a campaign to fund construction of the proposed facilities.

A dispute arose between Nonprofit Appellants and Foundation members Debra McLeod and Jay Spears. At a Connect board meeting that McLeod and Spears did not attend, Nonprofit Appellants discussed concerns regarding McLeod's conduct. These concerns were also shared with attorneys Julius William "Bill" Boyar, III and Kimberley Sterling. After the board meeting, Tom Pace, Senior Pastor of St. Luke's, and Michael Feinberg, cofounder of KIPP Houston, approached McLeod and Sears to discuss their concerns. Pace and Feinberg asked McLeod to resign from Connect, and she refused. Nonprofit Appellants then decided to withdraw from Connect and formed a new nonprofit organization to continue the project without Foundation.

---

[1] Tex. Civ. Prac. & Rem. Code §§ 27.001-.011.

2

Foundation expressly filed this lawsuit "Individually and in the Right of Connect" against attorney Boyar and law firms Boyar & Miller, P.C. d/b/a Boyar Miller, and Kimberly Sterling Associates, Inc. d/b/a Sterling Associates (collectively, Law Firm Appellants), and Nonprofit Appellants.[2] Foundation brought claims, among others, for negligence, fraud, breach of contract, tortious interference, breach and misapplication of fiduciary duty, conversion, violations of the Texas Uniform Trade Secret Act, and conspiracy.

The trial court granted a motion for summary judgment filed by appellants and dismissed Foundation's claims "made in the right of or on behalf of Connect" on the basis that Foundation lacked standing to assert those claims. Connect then filed a petition in intervention reasserting those claims, plus commercial bribery. Appellants filed their TCPA motion to dismiss, which the trial court denied.[3] This interlocutory appeal followed.[4]

### *Discussion*

Appellants challenge the trial court's denial of their motion to dismiss on the grounds that (1) the motion was timely and the TCPA applies because Connect's claims are based on or in response to the exercise of the rights to free speech and of association in connection with a matter of public concern, (2) Connect did not file a timely response to the motion to dismiss and thus failed to establish by clear and specific evidence a prima facie case for each essential element of its claims, and (3) Connect's claims are barred by the applicable statutes of limitations. We first address whether the motion was timely and then whether the TCPA applies.

---

[2] Despite suing "in the Right of Connect," Foundation also named Connect as a defendant.

[3] Appellants moved to dismiss all Connect's claims except fraud.

[4] *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(12) (authorizing interlocutory appeal of order denying TCPA motion to dismiss).

3

## I.    TCPA Motion Timely

A TCPA dismissal motion must be filed "not later than the 60th day after the date of service of the legal action." Tex. Civ. Prac. & Rem. Code § 27.003(b). "Legal action" under the statute means "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief." *Id*. § 27.001(6). The parties do not dispute that that the motion to dismiss was filed within 60 days of the date of service of the petition in intervention or that a petition in intervention is a petition under the statute. But Connect argues the petition in intervention relates back to the filing of the original petition, which would make the motion untimely. We disagree.

Connect filed its petition in intervention three months after the trial court dismissed for lack of standing Foundation's claims brought "Individually and in the Right of Connect." Thus, Connect had no pending claims when it filed its petition in intervention.[5] Likewise, Connect was not a party to the case until it filed the petition in intervention. A petition that adds new parties or new essential factual allegations asserts a new legal action and starts a new sixty-day period under the TCPA as to the new parties and the claims based on new factual allegations. *Montelongo v. Abrea*, 622 S.W.3d 290, 298 (Tex. 2021). Appellants were not required to file a TCPA motion to dismiss before Connect was even a party in the case and while Connect had no pending claims. *See id*. We conclude the TCPA motion was timely.

## II.    TCPA Applicable

Appellants contend in their first issue that the TCPA applies because

---

[5] *See infra* at IV.

Connect's legal action is based on or in response to appellants' exercise of their rights to free speech and of association, which appellants were required to establish by a preponderance of the evidence. Tex. Civ. Prac. & Rem. Code § 27.005(b). Under the TCPA, exercise of the right of free speech is defined as a communication made in connection with a matter of public concern. *Id.* § 27.001(3). Exercise of the right of association is defined in relevant part as "join[ing] together to collectively express, promote, pursue, or defend common interests relating to a . . . matter of public concern." *Id.* § 27.001(2). A matter of public concern is a "statement or activity regarding: (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (B) a matter of political, social, or other interest to the community; or (C) a subject of concern to the public." *Id.* § 27.001(7).

Appellants assert that Connect's claims all involve matters of public concern because they are based on communications and meetings aimed at removing McLeod from Connect's board of directors, withdrawing from Connect, and creating a new entity without Foundation "to pursue development of the community center." According to appellants, development of the community center is a matter of public concern.

**No Exemptions**. Connect argues that its fraud and misappropriation claims are exempt from the TCPA.[6] According to appellants, Connect did not establish below that any exemptions apply. Connect argued in its response to the motion to dismiss that claims based on misappropriation of trade secrets or commercial speech are expressly exempted from the TCPA.

---

[6] As mentioned, appellants did not move to dismiss the fraud claims, so we need not address whether those claims are exempt from the TCPA.

The nonmovant bears the burden of proving a statutory exemption. *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The statute expressly excludes legal actions (1) "arising from an officer-director, employee-employer, or independent contractor relationship that . . . seeks recovery for misappropriation of trade secrets or corporate opportunities"; and (2) "brought against a person primarily engaged in the business of selling . . . services, if the statement or conduct arises out of the sale . . . of . . . services, . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer." Tex. Civ. Prac. & Rem. Code § 27.010(a)(2), (a)(5)(A). As to the first exemption, appellants correctly assert that Connect did not show that the legal action arises from "an officer-director, employee-employer, or independent contractor relationship." *Id.* § 27.010(a)(5)(A). Accordingly, Connect has not established that exemption applies.

As to the second exemption—the so-called commercial speech exemption—Connect argued in its response, without citing any authority, that the exemption applies to all claims against Law Firm Appellants. On appeal, Connect likewise does not cite any case law in support of this argument. Although we construe briefs liberally and require only substantial compliance with briefing rules, arguments must be supported by clear and concise legal argument with appropriate citations to authorities. *See* Tex. R. App. P. 38.1(i) (regarding appellant's briefs), 38.2(a) (applying same requirements to appellee's briefs), 38.9 (requiring briefing rules to be construed liberally); *Burton v. Prince*, 577 S.W.3d 280, 292 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931–32 (Tex. App.—Houston [14th Dist.] 2008, no pet.). It is not our duty to fashion a legal argument for a party. *Burton*, 577 S.W.3d at 292; *see also Canton-Carter*, 271 S.W.3d at 931-32. A party must not only cite relevant

6

authority and the record but must also provide substantive legal analysis. *Burton*, 577 S.W.3d at 292. Connect failed to do so below or on appeal, and we decline to craft an argument for Connect, particularly given that Connect had the burden to show an exemption applies.[7]

**Matter of Public Concern**. Appellants contend that Connect's claims are based on or in response to appellants' exercise of the rights to free speech and of association. We first address the legal malpractice claims.

Connect initially asserts as to its legal malpractice claims, that "[l]egal malpractice has never been found to be subject to the TCPA unless the subject communications were actually in a legal action." That is not the test. The test is whether a communication at issue was made in connection with a matter of public concern or whether the defendants joined "together to collectively express, promote, pursue, or defend common interests relating to a . . . matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(2), (3). The cases cited by Connect in support of its argument all address whether the right to petition as defined by the TCPA was implicated. Appellants do not argue that their rights to petition were implicated under the TCPA, so the cases cited by Connect are inapplicable.

Connect alleges that Boyar and Boyar Miller failed to (1) "make appropriate disclosures [and] obtain the necessary consents or waivers," (2) "draft legal

---

[7] We note that the commercial-speech exemption applies narrowly, "only to *certain* communications related to a good, product, or service in the marketplace." *See Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 690 (Tex. 2018). The applicable communications are not protected free speech; rather they are "commercial speech which does no more than propose a commercial transaction." *Id.* Connect has not identified any such speech. *See Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *10 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.) ("[E]stablishing the applicability of the commercial speech exemption required [the nonmovant] to prove it by a preponderance of the evidence.").

documents which provided necessary and desired legal rights and protections for Connect," and (3) "provide (and in fact withheld[]) appropriate legal advice to Connect." These allegations are based on failures to do something, and on these facts, they are not predicated on communications that would implicate the right of free speech or on collective actions that would implicate the right of association because the failure to do something, standing alone, generally is not joining "together to collectively express, promote, pursue, or defend common interests." *See, e.g., DOJO Bayhouse, LLC v. Pickford*, No. 14-20-00237-CV, 2021 WL 6050677, at *4 (Tex. App.—Houston [14th Dist.] Dec. 21, 2021, no pet.) (mem. op.) (holding TCPA does not encompass "a failure to communicate"). Connect also alleges that Boyar and Boyar Miller provided "legal advice to Connect and/or some of its members or former members which was detrimental to Connect." We conclude this allegation implicates the right of association, as discussed more fully below.

Connect also posits that none of its claims involve a matter of public concern because the alleged communications and meetings were private, involve private contractual and tort disputes, and have "no potential impact on the public or the marketplace." What is a matter of public concern? Speech that can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017); (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)). Such matters include "a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id*. We look to the content, form, and context of the speech to determine if it is a matter of public concern. *Id*. For the TCPA to apply, the speech is not required to mention specifically the matter of public concern and does not need to have more than a tangential relationship to a matter of public

8

concern. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017).

We turn to the allegations in the petition in intervention to determine whether Connect's claims involve a matter of public concern. In a nutshell, Connect made the following factual allegations:

- Foundation sought nonprofit partners "to create a neighborhood hub in an underserved community."

- McLeod and Sears on behalf of Foundation pitched the idea to Feinberg, cofounder of KIPP Houston. Feinberg "embraced The Foundation's concept to create, through a collaboration of partners and an integration of their services, a dynamic healthy place of hope and education which would improve the lives of the area residents through self-reliance and partnerships."

- Foundation "intended to turn the [community center] concept into a model, which then could be utilized in other underserved communities across Houston, and possibly the nation, breaking the cycle of poverty through community building."

- Law firm Sterling would partner with Foundation to "develop plans for the [community center], and plan a campaign to fund construction of the proposed campus facilities."

- Law firm Boyar & Miller drafted an engagement letter to Connect "in connection with the development of a community center." Attorney Boyar is a chairperson for KIPP.

- A memorandum of understanding was drafted by the partners of Connect setting "forth the terms and understanding among the [partners] to fund a portion of operating and pre-development expenses associated with the community center."

- Foundation agreed to a large financial commitment and "its role as project manager, for seeing through the pre-development of Connect and the [community center]."

- Some of appellants "began to express concerns . . . about [McLeod] and her requests that [Nonprofit Appellants] 'lean in' to Connect and

9

the [community center] project, and be accountable to one another."

- Founding director of Connect, Anne Whitlock, began to express concerns to Boyar about the community center project. Appellants decided to address these concerns at a board meeting that McLeod and Spears did not attend.

- Funding provided by Foundation included, among other things, expenses for community activities and events. This funding was acknowledged in grant application paperwork submitted to Houston Endowment.

- After McLeod and Spears refused to withdraw from Connect, Nonprofit Appellants withdrew from Connect and started a new nonprofit organization (My Connect Community) to complete the project. Funds for the project were diverted to the new organization.

- "Whitlock had established Connect's name in the community, developed relationships on Connect's behalf, and had gotten the [community center] model off the ground."

As Connect alleged in the petition, these factual allegations "constitute actionable claims of negligence, gross negligence, malpractice, fraud, fraudulent inducement, breach of contract, tortious interference, breach of fiduciary duty, misapplication of fiduciary property, conversion, violations of the Texas Uniform Trade Secret Act, conspiracy, and commercial bribery." It is hard to envision how these allegations about plans to build and fund a community center to serve an underserved community and "improve the lives of area residents" could not be fairly considered a matter of concern to the community. All the allegations involve communications and meetings relating to appellants' purported attempts to complete the community center project without McLeod and Spears' involvement.

Although the supreme court has disapproved of applying the TCPA to a private contract dispute affecting only "the economic interest of the parties and others with an interest" in the transaction, *see Creative Oil & Gas, LLC v. Lona*

*Hills Ranch, LLC*, 591 S.W.3d 127, 137 (Tex. 2019), that is not the situation presented here. A communication or collective action regarding "a good, product, or service in the marketplace" that has "some relevance to a wider audience of [consumers] in the marketplace, as opposed to communications of relevance only to the parties to a particular transaction," would be a matter of public concern. *Id*. at 134. The issues here involve plans for developing, building, and funding a community center, implicating the broader vision of the parties to improve the lives of area residents. These issues are indeed relevant to a wide audience of potential consumers within the community. The alleged communications and meetings thus have public relevance beyond the pecuniary interests of the private parties involved. *See id*. at 136. In a nutshell, the nature of the dispute is over who has the right to make decisions regarding a project meant to benefit the community. Specifically, Connect complains that McLeod and Spears were forcibly removed from the decision-making process.

Considering the record as a whole, we conclude the speech and meetings at issue do not involve purely private matters; they were based on or were in response to the exercise of the right of association because they pertain to "a subject of general interest and of value and concern to the public."[8] *See Snyder*, 562 U.S. at 453; *see also ExxonMobil Pipeline Co.*, 512 S.W.3d at 899; *Creative Oil & Gas*, 591 S.W.3d at 136. Carving out the legal malpractice claims discussed above, the remaining claims are factually predicated on alleged collective actions that

---

[8] We further note Connect's argument that this dispute has "no potential impact on the public or the marketplace" does not take into account the expense of the litigation and how that may impact the monies that were earmarked for development of the community center.

Although some of Connect's claims are not expressly predicated on communications that would implicate the right to free speech (i.e., conversion), all the claims other than the specific legal malpractice claims mentioned above are based on or in response to the right of association. Thus, we do not need to address whether the right of free speech is also implicated as to each claim.

appellants sufficiently demonstrated were within the scope of the TCPA. We sustain appellants' first issue.

### III.  Late Response to TCPA Motion Presumably Authorized

Because appellants met their burden to show the TCPA applies, Connect was required to establish by clear and specific evidence a prima facie case for each essential element of its claims. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c). Appellants do not argue that Connect failed to present clear and specific evidence in support of any element of its claims. Instead, appellants contend in their second issue only that Connect filed its response to the TCPA motion late. According to appellants, we should hold that Connect was required, but failed, to file a motion for leave to file a late response and to establish good cause for its untimely filing. That requirement is not set forth in the TCPA, and we have found no caselaw setting forth such a requirement. Appellants acknowledge there is a lack of caselaw on this issue but ask us to apply summary judgment procedures to the schedule for briefing and hearing TCPA motions to dismiss. We decline to do so here for two reasons: (1) appellants did not make this argument in their reply to Connect's response to the motion, and (2) appellants did not provide an appellate record of the hearing on the motion, and we cannot make any presumptions in favor of appellants on this issue.

A party responding to a TCPA motion to dismiss "shall file the response, if any, not later than seven days before the date of the hearing on the motion to dismiss *unless otherwise provided by an agreement of the parties or an order of the court*."[9] *Id*. § 27.003(e) (emphasis added). Without a hearing record, we cannot

---

[9] The summary judgment rule is worded slightly differently: "Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response." Tex. R. Civ. P. 166a(c).

12

assess whether the parties agreed to or the trial court allowed a late-filed response. We presume that the omitted portions of the record are relevant to the disposition of the appeal and that they support the trial court's order denying the motion to dismiss. *See Kings River Trail Ass'n v. Pinehurst Trail Holdings, L.L.C.*, 447 S.W.3d 439, 451 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (noting that appellate courts generally must presume omitted portions of trial record are relevant to disposition of appeal and support trial court's judgment).

The trial court stated in its order that it reviewed "the complete file, motion, responses, replies, evidence, exhibits, summary judgment evidence incorporated by reference, prior orders of this Court, all applicable case law, and arguments of counsel [and] engaged in a full analysis of the TCPA as it relates to this particular case." We presume that the omitted portions of the record support the trial court's order in which it states that it considered all responses, evidence, and exhibits. In accordance with the trial court's order, we thus presume the parties agreed to or the trial court allowed the late-filed response.[10] We overrule appellants' second issue, but this does not end our inquiry because appellants could still prevail by establishing a valid defense to Connect's claims.

## IV.    Claims Time-Barred

In their third issue, appellants contend that Connect's claims are time-barred as a matter of law by the applicable statutes of limitations.[11] After establishing the statute applies, and once the nonmovant establishes by clear and specific evidence

---

[10] Because appellants do not argue on appeal that Connect otherwise failed to satisfy its burden to establish by clear and specific evidence a prima facie case for each essential element of its claims, we do not address that issue.

[11] Appellants argue that all Connect's claims are time-barred, including the fraud claims. We do not include the fraud claims in our analysis because as mentioned, appellants did not move to dismiss those claims.

a prima facie case for each essential element of the claims in question, a movant can still prevail on a TCPA motion by establishing by a preponderance of the evidence each essential element of a valid defense. Tex. Civ. Prac. & Rem. Code § 27.005(d); *Republic Tavern & Music Hall, LLC v. Laurenzo's Midtown Mgmt., LLC*, 618 S.W.3d 118, 122 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

Connect does not dispute that the petition in intervention was filed after the applicable statutes of limitations had run. Connect contends, however, that its claims were raised timely by Foundation in the original petition, and "[t]he only difference is that now Connect asserts these same claims in its own right, when the claims were previously asserted for Connect by [Foundation]." According to appellants, Connect's claims were time-barred by the time Connect filed its petition in intervention.

It is undisputed that the trial court dismissed the claims for lack of standing. At issue is whether Connect could circumvent the statutes of limitations and revive those claims by bringing them on its own behalf. According to Connect, the relevant issue is whether Foundation had the capacity to bring Connect's claims, not standing. Despite this assertion, Connect also argues that "[t]he result in favor of Connect is the same whether capacity or standing" is at issue: that the petition in intervention should relate back to Foundation's original petition for purposes of limitations. We first address whether the trial court erred in concluding that Foundation lacked standing to bring claims on behalf of Connect. We then analyze whether Connect's intervention relates back to the filing of the original petition.

**No Standing**. A plaintiff must have both standing and capacity to bring a lawsuit. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Standing is a prerequisite to maintaining a suit in state court. *Williams v. Lara*, 52

S.W.3d 171, 178 (Tex. 2001) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)). Generally, unless standing is conferred by statute, "a plaintiff must demonstrate that he or she possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." *Id.* at 178–79 (citing *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984)). Standing focuses on whether a party has a "justiciable interest" in the outcome of the suit. *Lovato*, 171 S.W.3d at 848. Standing is a component of subject matter jurisdiction, and we review a trial court's determination of standing de novo. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004).

Foundation is a member of Connect, a nonprofit corporation. An individual shareholder of a for-profit corporation ordinarily has no individual cause of action for a wrong done to the corporation. *Tran v. Hoang*, 481 S.W.3d 313, 316 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). But a derivative suit allows a shareholder to step into the shoes of a corporation and sue on its behalf. *Id.* Texas law permits shareholders of for-profit corporations to bring derivative suits, within strict parameters, pursuant to the Business Organizations Code. *Id.* (citing Tex. Bus. Orgs. Code §§ 21.551–21.563). Section 21.552 specifically refers to a shareholder's "standing" to "institute or maintain a derivative proceeding." Tex. Bus. Orgs. Code § 21.552. But no statute confers derivative standing upon members to sue on behalf of a nonprofit corporation. *Tran*, 481 S.W.3d at 316.

Our sister court has thus held that members of a nonprofit corporation lack derivative standing absent authority granted in a nonprofit's organizational documents. *Id.* at 317. This makes sense because members of a nonprofit organization are not shareholders with a personal stake in the outcome of a suit against the nonprofit organization. *See id.*; *see also Lovato*, 171 S.W.3d at 848; *cf.*

15

*Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 778 (Tex. 2020) (holding partner or stakeholder in a business organization has standing to sue for loss in value of organization as a personal injury based on the lowered value of the partner's or stakeholder's share in the organization). This is consistent with the statute, which defines a nonprofit corporation, in relevant part, as "a corporation no part of the income of which is distributable to a member, director, or officer of the corporation." Tex. Bus. Orgs. Code § 22.001(5).

We agree with our sister court that members of a nonprofit corporation generally lack standing to bring a derivative lawsuit on behalf of the corporation. And we see no need to apply an exception to the general rule under these circumstances. Connect admits that Foundation knowingly brought the lawsuit on behalf of Connect but contends that Connect could not bring the lawsuit itself because it could not get required board of director approval to do so. But Foundation conceded below that it was the sole member of Connect when the lawsuit was filed and as the sole member, Foundation could have authorized Connect to bring the lawsuit.[12] We conclude that Foundation lacked standing to sue on behalf of Connect. We turn to whether Connect's claims relate back to the filing date of the original petition, despite Foundation's lack of standing.

**No Relation Back**. Connect argues that its claims should relate back to the original petition for purposes of limitations even if Foundation lacked standing. Statutes of limitations apply to claims asserted in an intervention. *Reyes v. Guandique*, 558 S.W.3d 330, 333 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Texas's relation back doctrine is codified into statute as an exception to limitations

---

[12] As Foundation stated, "Since The Foundation is the sole remaining member of Connect, the consent of either Jay or Debbie . . . in their capacities as Directors appointed by the Foundation, should be sufficient" to provide standing by adding Connect as a plaintiff.

16

as follows:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

Tex. Civ. Prac. & Rem. Code § 16.068.

With limited exceptions, section 16.068 does not apply when a new party is added. *Chavez v. Andersen*, 525 S.W.3d 382, 386 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Section 16.068 generally "addresses adding claims, not parties." *Id.* Unless an exception applies, a pleading adding a new party does not relate back to the original pleading. *Id.* at 387.

As discussed, Connect was not a party to the case before the petition in intervention was filed because the trial court had dismissed Foundation's claims brought on behalf of Connect for lack of standing. Connect was required to show that its petition in intervention falls within an exception to the general rule. *See id.* But the authorities cited by Connect do not support its argument that the claims in the petition for intervention relate back to the original petition. Connect relies on several opinions involving capacity, misnomers, and distinguishable facts. We discuss in turn why these cases do not apply.

Capacity, unlike standing, is not a jurisdictional defect. *In re Bridgestone Americas Tire Operations, LLC*, 459 S.W.3d 565, 573 (Tex. 2015). Therefore, unlike standing, a defect in capacity can be cured. *See Lovato*, 171 S.W.3d at 853. Several opinions cited by Connect addressed the issue of capacity and did not involve plaintiffs that lacked standing to bring a lawsuit. *See id.* (involving defect

17

in capacity); *see also Rodarte v. Investeco Group, L.L.C.*, 299 S.W.3d 400, 407 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (involving perfection of appeal brought by appellant in representative capacity); *Thomas v. Dickson*, No. 14-02-00342-CV, 2003 WL 22176589, at *2 (Tex. App.—Houston [14th Dist.] Sept. 23, 2003, no pet.) (mem. op.) (involving defect in pleading based on capacity). Here, Foundation lacked derivative standing to bring a lawsuit on behalf of Connect, which deprived the trial court of jurisdiction over those claims, so the capacity cases cited by Connect allowing the plaintiffs to cure defects in capacity are not persuasive.

Connect also argues that this is a case of misnomer. A misnomer occurs when a party misnames itself or another party, but the correct parties are involved. *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009). That did not happen here. Foundation sued on its own behalf and tried to sue on behalf of Connect. Foundation did not misname itself or Connect.

Connect argues that this case is like *Foust v. Estate of Walters*, 21 S.W.3d 495 (Tex. App.—San Antonio 2000, pet. denied), which involved a lawsuit brought by five farmers in lieu of the corporate farm that was the correct plaintiff. *Id*. at 500-01. The trial court sustained special exceptions, and the plaintiffs amended their petition to substitute the corporation as plaintiff. *Id*. at 500. The court of appeals held that the substitution of the corporate entity for the individuals who were the sole owners of the corporation was proper, and the relation-back doctrine operated to preserve the corporate claim against a limitations bar. *Id*. at 501. The *Foust* case is akin to a lawsuit brought by shareholders who have derivative standing to sue on behalf of a for-profit corporation. As discussed above, members of a nonprofit corporation lack such derivative standing to sue on behalf of the corporation. Therefore, *Foust* is not persuasive.

18

Connect cited another misnomer case that is also factually distinguishable. *See Pierson v. SMS Fin. II, L.L.C.*, 959 S.W.2d 343 (Tex. App.—Texarkana 1998, no pet.). In that case, the plaintiff inadvertently misnamed itself as SMS I instead of SMS II, and the court of appeals held the petition related back to the original filing and limitations did not bar the claim. *Id.* at 347. Here, Foundation knowingly brought the lawsuit on behalf of Connect when Connect could have brought the lawsuit on its own behalf. This is not a misnomer case. And Connect has not shown that it could not sue or be sued in its individual capacity.

Connect contends on appeal that it could not bring the lawsuit on its own behalf at the time it was filed because its board of directors did not include at least one director appointed by each member of Connect, as required to approve filing the lawsuit. But it is undisputed that by the time the lawsuit was filed, all members of Connect other than Foundation had withdrawn. The argument that Connect could not file claims on its own behalf is without merit. Connect also asserts that its ratification of the lawsuit after the fact cured any defect in its claims being improperly brought derivatively by Foundation. But Connect could not cure a jurisdictional lack of standing. *See Bridgestone*, 459 S.W.3d at 573.

The other two cases cited by Connect are similarly distinguishable. The *Reyes* case stands for the proposition that statutes of limitations apply to claims asserted in an intervention when the parties have separate claims. 558 S.W.3d at 333. Connect argues that it shares the same claims as Foundation and thus Connect's claims should relate back to the filing of the original petition. That is incorrect.

When two people claim an interest in a single claim, and one of them timely files suit, the other's intervention in the suit outside the limitations period relates

19

back to the timely filed suit and is not barred by limitations. *Id*. Foundation expressly brought two sets of claims—those brought "individually" and those brought "in the right of" Connect. Each set of claims, although based on the same facts, is separate. *See id*. at 334 ("Though these alleged personal injuries purportedly resulted from the same vehicular accident and though Cortez and Reyes were in the same vehicle, none of these alleged facts would give Cortez a right to assert Reyes's personal-injury claims or give Reyes a right to assert Cortez's personal-injury claims."). The set of claims filed on behalf of Connect was dismissed for lack of standing. At that time and until the petition in intervention was filed, Connect had no pending claims in this lawsuit.

The final case cited by Connect, *Johnston v. Crook*, 93 S.W.3d 263 (Tex. App.—Houston [14th Dist.] 2002, pet. denied), involved a lawsuit filed by a woman after her divorce. *Id*. at 266. A receiver intervened in that case to collect a divorce judgment on the plaintiff's behalf. *Id*. The receiver's claim was identical to and was substituted for the woman's claim. *Id*. at 269. Thus, the claims were the same, and the date of the original filing controlled "for purposes of limitations." *Id*. Foundation and Connect do not share the same claims.

We conclude that appellants met their burden to show Connect's claims are barred by limitations.[13] And on this record, Connect has not established an exception to the limitations bar. Accordingly, the trial court erred in denying appellants' TCPA motion to dismiss. We sustain appellants' third issue.

### *Conclusion*

Appellants established not only that the TCPA applies to all but the three

---

[13] We offer no opinion as to whether the legal malpractice claims as to which the TCPA is inapplicable are barred by limitations.

legal malpractice claims discussed above but also established a valid defense to the applicable claims. Accordingly, the trial court erred in denying the TCPA motion to dismiss as to the applicable claims. Consistent with appellants' request, we affirm in part and reverse in part the trial court's order denying the motion and remand the case to the trial court for proceedings consistent with this opinion, including dismissal of all Connect's claims against appellants except fraud and the specifically enumerated malpractice claims and an award to appellants of costs and reasonable attorney's fees authorized by the TCPA. *See* Tex. Civ. Prac. & Rem. Code § 27.009(a)(1); *see also Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 865-6 (Tex. App.—Houston [14th Dist.] 2017, no pet.).


/s/    Frances Bourliot
        Justice


Panel consists of Justices Jewell, Bourliot, and Poissant.

21